**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| BRETTA KARP, on behalf of herself | ) | |
| individually and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: ___-cv-_____ (____) |
| v. | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| CIGNA HEALTHCARE, INC., | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

<u>**CLASS ACTION COMPLAINT**</u>

## I.   NATURE OF THIS ACTION

1.     This is an action to redress and put an end to continuing, systemic gender discrimination by CIGNA Healthcare, Inc. ("CIGNA" or "Defendant") against its female employees nationwide.

2.     Bretta Karp ("Plaintiff" or "Class Representative"), a current CIGNA employee in Massachusetts, brings this class action against CIGNA on behalf of herself and all similarly situated female CIGNA employees, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), *et seq.*, as amended ("Title VII"), and Massachusetts General Law ("MGL") c. 151B.  Potential class members have worked and/or continue to work for CIGNA throughout the United States.

3.     Class Representative Karp seeks to represent female employees of CIGNA who have been subjected to one or more aspects of the systemic gender discrimination described in this Complaint, including, but not limited to: discriminatory policies, practices and/or procedures

in selection, promotion and advancement; disparate pay; differential treatment; and hostility in the workplace.  The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

4.      To fully redress CIGNA's pervasive and discriminatory employment policies, practices and/or procedures, the Class Representative seeks, on behalf of herself and all members of the proposed class, declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses.

## II.      JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the Title VII claims of the Class Representative and the proposed class.  The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the MGL c. 151B claims of the Class Representative and other class members who work or have worked for CIGNA in Massachusetts.

6.      Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(1) and (c) because CIGNA conducts business and is subject to personal jurisdiction in this District.

7.      The District of Massachusetts is the most logical forum in which to litigate the claims of the Class Representative and the proposed classes. CIGNA has both a physical presence and a Registered Agent in Massachusetts. The Class Representative as well as numerous potential class members reside and have worked for CIGNA in this District. Furthermore, other potential class members reside in other judicial districts throughout the United States in which CIGNA conducts business.   Finally, CIGNA's primary Massachusetts office is located in Newton, Middlesex County, Massachusetts and CIGNA's registered agent is located in Boston, Masssachusetts.

## III.   PROCEDURAL HISTORY

8.      Class Representative Karp timely filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission ("EEOC") on September 30, 2010.  Mrs. Karp received her Notice of Right to Sue on February 22, 2011 and has timely filed suit within 90 days of that receipt.

9.      The Class Representative relies on her Charge of Discrimination in connection with her Title VII claim and her claim under MGL c. 151B.

## IV.   PARTIES

### A.      Plaintiff-Class Representative

10.      **Bretta Karp** is a female citizen of the United States and a resident of Shrewsbury, Massachusetts.  Mrs. Karp has been employed by CIGNA from approximately 1997 to the present.

### B.      Defendant

11.      **CIGNA Healthcare, Inc.** is a global health service organization.  CIGNA's core businesses are health care products and services (insured and self-funded medical, dental, behavioral health, vision, and prescription drug benefit plans, health advocacy programs) and group disability, life and accident insurance. CIGNA's primary Massachusetts office is located in Newton, Middlesex County, Massachusetts.  CIGNA's registered agent is located in Boston, Suffolk County, Massachusetts.   CIGNA is incorporated in Vermont with a corporate headquarters in Pennsylvania.

12.      CIGNA is, and at all relevant times has been, an "employer" within the meaning of Title VII and MGL c. 151B.

## V.      CLASS ALLEGATIONS

### A.      Class Definitions

13.     The Class Representative seeks to maintain claims on her own behalf and on behalf of two classes (a national class and a Commonwealth of Massachusetts class) of current and former CIGNA employees.   The Class Representative is a member and the proposed representative of both classes.

14.     Class 1 would assert violations of Title VII.   Class 1 consists of all women who are, or have been, employed by CIGNA in the United States at any time during the applicable liability period.   On information and belief, there are hundreds, if not thousands, of members of Class 1.

15.     Class 2 would assert violations of MGL c. 151B.   Class 2 consists of all women who are, or have been, employed by CIGNA in Massachusetts at any time during the applicable liability period.   On information and belief, there are hundreds, if not thousands, of members of proposed Class 2.

### B.      Efficiency of Class Prosecution of Common Claims

16.     Certification of the two classes of female employees similarly situated to the Class Representative is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the Class Representative and the classes.

17.     The prosecution of the Title VII and MGL c. 151B claims of the Class Representative individually and of the classes will require resolution of the common question of whether CIGNA has engaged in a systemic pattern and/or practice of gender discrimination against female employees.   The Class Representative seeks remedies to eliminate the adverse effects of such discrimination in her own life, career and working conditions and in the lives,

4

careers and working conditions of the proposed class members, and to prevent continued gender discrimination in the future.

18.     The Class Representative has standing to seek such relief because of the adverse effect that such discrimination has had on her individually and on female employees of CIGNA, generally.

19.     Certification of the two classes of female CIGNA employees is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such common questions of law and fact for the Class Representative, the members of the proposed classes, and CIGNA.   Absent class certification, the same evidence and issues would be subject to relitigation in multiple individual lawsuits, with an attendant risk of inconsistent adjudications and conflicting obligations.

**C.     Numerosity and Impracticability of Joinder**

20.     Both classes that the Class Representative seeks to represent are too numerous to make joinder practicable.  Each class includes hundreds, if not thousands, of current, former, and future female CIGNA employees.

**D.     Common Questions of Law and Fact**

21.     Resolving the claims of the Class Representative and the classes will require the adjudication of numerous questions of law and fact common to the class members.

22.     Common questions of law include, among others: (a) the proper standards for proving a pattern or practice of discrimination by CIGNA against its female employees; (b) whether CIGNA has engaged in unlawful, systemic gender discrimination in its selection, promotion, advancement, transfer, training, and discipline policies, practices and/or procedures, and in the general terms and conditions of work and employment; and (c) whether CIGNA is

liable for a continuing systemic violation of Title VII and/or MGL c. 151B.

23.     Common questions of fact include, among others, whether CIGNA has, through its policies, practices and/or procedures: (a) denied or delayed the promotion of women; (b) precluded female employees from eligibility for promotions by denying them training that is provided to male employees; (c) paid female employees at a disparate level; (d) subjected female employees to differential treatment, including but not limited to less preferable work assignments, inequitable evaluations and restricted availability of company resources; and/or (e) subjected female employees to hostility based on their gender.

24.     The employment policies, practices and/or procedures to which the Class Representative and the class members are subject are set at CIGNA's corporate level and apply uniformly to class members throughout the United States.  These employment policies, practices and/or procedures thus affect the members of the proposed classes in the same ways, no matter which judicial district, corporate division, or position the class members work in.

25.     Throughout the liability period, a disproportionately large percentage of the managers and supervisors at CIGNA have been male.

26.     Discrimination in selection, promotion and advancement occurs as a pattern and practice throughout all levels and all divisions of CIGNA. Selection, promotion, and advancement opportunities are driven by personal familiarity, subjective decision making, preselection and interactions among male managers, supervisors, and subordinates, rather than by merit or equality of opportunity.  As a result, male CIGNA employees have advanced and continue to advance more rapidly to better and higher paying jobs than do female employees.

27.     CIGNA's policies, practices and/or procedures have had an adverse impact on female employees seeking selection for, or advancement to, better and higher paying positions.

In general, the higher the level of the job classification, the lower the percentage of female employees in it.  This adverse impact is common to all members of the proposed classes.

**E.     Typicality of Claims and Relief Sought**

28.     The Class Representative asserts claims that are typical of the claims of both of the proposed classes. The Class Representative is, like the members of both of the proposed classes, a woman who has worked for CIGNA during the liability period. She asserts claims in each of the categories of claims asserted on behalf of each proposed class.

29.     Similarly, the relief sought by the Class Representative is typical of the relief sought on behalf of both of the proposed classes.

30.     Differential treatment between male and female employees occurs as a pattern and practice throughout all levels and departments of CIGNA. Gender discrimination in selection, promotion, advancement, evaluation, and training affects the compensation of the Class Representative and all of the class members in the same ways.  CIGNA's predominantly male managers hold female employees, including both the Class Representative and class members, to stricter standards than male employees, and thus, female employees often receive lower performance appraisals than males for performing at the same level.  Additionally, male employees more often receive favorable work assignments and other forms of preferential treatment, including the allocation of company resources.

31.     Gender discrimination in the form of a hostile work environment occurs as a pattern and practice throughout all levels and departments of CIGNA and affects the Class Representative and all of the class members in the same ways.  Male supervisors and employees have harassed and intimidated female employees, have made it clear in various ways that they favor male employees, and otherwise have created a working environment hostile to women.

32.     On information and belief, other employees have complained to CIGNA management about gender discrimination and a hostile work environment.   Company investigations into these complaints have either been nonexistent or inadequate and superficial. The Class Representative and all of the class members have been affected in the same ways by CIGNA's failure to implement adequate procedures to detect, monitor, and correct this pattern and practice of discrimination.

33.     CIGNA has failed to create adequate incentives for its managers to comply with equal employment opportunity laws regarding each of the employment policies, practices and/or procedures referenced in this Complaint and has failed to discipline adequately its managers and other employees when they violate the anti-discrimination laws.   These failures have affected the Class Representative and all of the class members in the same ways.

34.     The relief necessary to remedy the claims of the Class Representative is exactly the same as that necessary to remedy the claims of the members of the classes.

35.     The Class Representative seeks the following relief for her individual claims and for those of the members of the classes: (a) a declaratory judgment that CIGNA has engaged in systemic gender discrimination against female employees by limiting their ability to be promoted to better and higher paying positions, by limiting their employment opportunities to lower and less desirable classifications, by limiting their training and transfer opportunities, by exposing them to differential treatment, and by subjecting them to gender hostility at work; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of CIGNA's promotion, transfer, training, performance evaluation, compensation, work environment, and discipline policies, practices and/or procedures so that women will be able to compete fairly in the future for promotions, transfers, and assignments to

better and higher paying classifications with terms and conditions of employment traditionally enjoyed by male employees; (d) injunctive relief which effects a restructuring of CIGNA's workforce so that females are promoted into higher and better paying classifications which they would have held in the absence of CIGNA's past gender discrimination; (e) back pay, front pay, and other equitable remedies necessary to make the female employees whole from the Defendant's past discrimination; (f) compensatory damages; (g) punitive and nominal damages to prevent and deter CIGNA from engaging in similar discriminatory practices in the future; and (h) attorneys' fees, costs and expenses.

### F.    Adequacy of Representation

36.    The Class Representative's interests are coextensive with those of the members of the two classes that she seeks to represent.  The Class Representative seeks to remedy CIGNA's discriminatory employment policies, practices and/or procedures so that women will no longer be prevented from advancing into higher paying and more desirable positions, receive disparate pay and differential treatment, or be subjected to gender hostility at work.

37.    The Class Representative is willing and able to represent the proposed classes fairly and vigorously as she pursues her similar individual claims in this action.

38.    The Class Representative has retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and financial demands of litigating an employment discrimination class action of this size and complexity.

39.    The combined interests, experience, and resources of the Class Representative and her counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

G.      **Requirements of Rule 23(b)(2)**

40.     CIGNA has acted or refused to act on grounds generally applicable to the Class Representative and to the members of both proposed classes.

41.     CIGNA has acted on grounds generally applicable to the class members by adopting and following systemic policies, practices and/or procedures which are discriminatory on the basis of gender. Gender discrimination is CIGNA's standard operating procedure rather than a sporadic occurrence.

42.     CIGNA has refused to act on grounds generally applicable to the class members by refusing to, among other things: (a) adopt and apply selection, promotion, training, performance evaluation, compensation and discipline policies, practices and/or procedures that do not have a disparate impact on, or otherwise systemically discriminate against, women; (b) provide equal terms and conditions of employment for females; and (c) provide a working environment which is free of gender hostility.

43.     CIGNA's systemic discrimination and refusals to act on grounds that are not discriminatory justify the requested final injunctive and declaratory relief with respect to all of the class members.

44.     Injunctive and declaratory relief are the predominant relief sought in this case and are the essential predicate for the Class Representative's and class members' entitlement to monetary and nonmonetary remedies.

45.     Entitlement to declaratory and injunctive relief follows directly and automatically from proof of the common questions of law and fact regarding the existence of systemic gender discrimination against female employees at CIGNA.  Such entitlement is, in turn, the factual and legal predicate for the Class Representative's and the class members' entitlement to monetary

and nonmonetary remedies for individual losses caused by such systemic discrimination, as well as their entitlement to exemplary damages.

**H.      Requirements of Rule 23(b)(3)**

46.      The common issues of fact and law affecting the claims of the Class Representative and members of the proposed classes, including but not limited to the common issues identified herein, predominate over any issues affecting only individual claims.

47.      A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representative and the members of the classes.

48.      The cost of proving CIGNA's pattern and practice of discrimination makes it impracticable for the Class Representative and members of the proposed classes to control the prosecution of their claims individually.

**VI.      CLASS CLAIMS**

49.      The Class Representative and the two classes she seeks to represent have been subjected to a systemic pattern and practice of gender discrimination involving a battery of practices which have also had an unlawful disparate impact on them and their employment opportunities.   This gender discrimination includes adhering to a policy and practice of restricting the promotion and advancement opportunities of female employees so that they remain in the lower classification and compensation levels.   In effect, CIGNA bars female employees from better and higher paying positions which have traditionally been held by male employees.   The systemic means of accomplishing such gender stratification include, but are not limited to, CIGNA's promotion, training and performance evaluation policies, practices and/or procedures.

50.     CIGNA's promotion, advancement, training, and performance evaluation policies, practices and/or procedures incorporate the following discriminatory practices: (a) relying upon subjective judgments, procedures, and criteria which permit and encourage the incorporation of gender stereotypes and bias by CIGNA's predominately male managerial and supervisory staff in making promotion, training, performance evaluation, and compensation decisions; (b) refusing or failing to provide equal training opportunities to women; (c) refusing or failing to provide female employees with the same company resources given to males; (d) refusing or failing to provide women with opportunities to demonstrate their qualifications for advancement; (e) refusing or failing to establish and/or follow policies, practices, procedures, or criteria that reduce or eliminate disparate impact and/or intentional gender bias; (f) using informal, subjective selection methods which allow for rampant gender discrimination; (g) discouraging women from applying for and expressing interest in promotions and career-enhancing positions; and (h) subjecting women to gender hostility in the work environment.

51.     CIGNA's promotion policies, practices and/or procedures have had a disparate impact on the Class Representative and the class members.  These procedures are not valid, job-related, or justified by business necessity.  There are alternative objective and more valid selection procedures available to CIGNA that are more closely related to the actual responsibilities of the positions, and that would have less of a disparate impact on females.  However, CIGNA has failed or refused to use such alternative procedures.

52.     CIGNA's promotion, training, performance evaluation, compensation, and transfer policies, practices and/or procedures are intended to have a disparate impact on the Class Representative and the classes she seeks to represent.  These practices form a part of CIGNA's

overall pattern and practice of keeping females in the lower classifications with less desirable terms and conditions of employment.

53.     The Class Representative and the classes she seeks to represent have been adversely affected and harmed by CIGNA's systemic pattern and practice of gender discrimination. The harm to the Class Representative and class members includes loss of compensation, wages, back pay, and employment benefits.  This harm results from experiences of discrimination including: being denied promotions in favor of equally or less qualified male employees; being denied training opportunities provided to male employees; receiving lower performance appraisals for performing the same work at the same level as male employees; the removal of career-advancing job responsibilities; and being subjected to a hostile work environment.

54.     The Class Representative and the classes she seeks to represent have been subjected to gender hostility at work, both severe and pervasive, which affects the terms and conditions of their employment.  CIGNA's actions and inactions encourage this behavior by its male employees.

55.     The Plaintiff-Class Representative individually has no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is the only means of securing adequate relief.  The Plaintiff is now suffering, and will continue to suffer, irreparable injury from CIGNA's unlawful policies, practices and/or procedures as set forth herein unless those policies, practices and/or procedures are enjoined by this Court.

## VII.    ALLEGATIONS OF CLASS REPRESENTATIVE BRETTA KARP

### A.    Background

56.     Plaintiff-Class Representative Bretta Karp joined CIGNA as a Contract Manager

in 1997 after CIGNA acquired her previous employer, Healthsource, Inc.

57.     Before joining CIGNA, Mrs. Karp worked in the health insurance industry for eight years, holding previous positions at Wellpoint Health Networks and MassMutual Life Insurance Company.  Mrs. Karp obtained a Masters in Business Administration degree in 1993.

58.     From 1997 to 2004, Mrs. Karp held various job titles at CIGNA—including Director, Assistant Vice President of Contracting, and Senior Contract Negotiator—relating to the Vermont, Massachusetts, and Rhode Island territories.

59.     From 2004 to 2007, Mrs. Karp was a Provider Contracting Manager/Field Contracting Lead for the New Hampshire and Vermont territories.

60.     In 2006, Mrs. Karp won two internal CIGNA awards for her performance.  She won the National Leadership Award for the New Hampshire and Vermont markets, and the Top Facility Contracting Award for the Vermont market.

61.     Beginning in 2007, Mrs. Karp served as a Provider Contracting Manager for the Vermont, Massachusetts, and Rhode Island territories.

62.     In 2010, CIGNA removed the Vermont territory from her responsibilities.

63.     Mrs. Karp currently manages the Massachusetts and Rhode Island provider networks, made up of hospital systems, physician groups, and other providers of health care services.  She manages the function of Provider Contracting with hospitals, physician groups and other health care providers.  She is responsible for directing her staff, who negotiate the contracts that govern the rates and terms of CIGNA's payments to its network providers.  She oversees the preparation, analysis, review and projection of the financial impact of provider contracts and specific terms.

64.     Mrs. Karp supervises a team of three direct reports, who are all Provider Contracting Senior Specialists (contract negotiators).  Mrs. Karp has a dotted line responsibility for managing five Provider Services Representatives.  The function of Provider Services is to maintain clear communications and information to network providers with regard to CIGNA's policies and procedures. Provider Services Representatives are the liaisons between CIGNA and the providers.  They provide orientations and trainings to the providers' office staff.

65.     Throughout her employment at CIGNA, Mrs. Karp has been adversely affected by the systemic pattern and practice of gender discrimination detailed in this Complaint, including CIGNA's discriminatory promotion, transfer, performance evaluation, compensation, and discipline policies, practices and/or procedures.  These policies, practices, and/or procedures have prevented Mrs. Karp from advancing into higher and better paying positions for which she is qualified.

**B.     Performance Appraisal System**

66.     CIGNA's Performance Appraisal System employs a "Performance Distribution & Calibration" component, also called throughout the company "forced rankings."   Under this paradigm, the supervisor or manager assesses a subordinate based on the following performance rating scale: "Exceptional," "Solid" (which is comprised of three levels), "Needs Improvement," and "Too New to Rate."   After the direct supervisor rates the subordinate, the next level supervisor "calibrates" or adjusts that employee's ranking based on a pre-set distribution of performance scores into what is essentially a bell curve.  Upon information and belief, CIGNA force ranks performance ratings based on the following percentages: 20% Exceptional, 70% Solid, and 10% Needs Improvement.   In this manner, an employee who had been rated

Exceptional by a direct supervisor could receive a Solid rating on the official performance review.  Such forced ranking occurs at every level of CIGNA.

67.     Upon information and belief, CIGNA disproportionately applies forced ranking to its female employees' performance ratings, causing female employees to receive lower assessments than merited by their performance.

68.     Throughout Mrs. Karp's employment with CIGNA, she has received ratings of "above average" or "exceptional" on her mid-year and year-end reviews, based on her successful achievement of particular objectives established by her management team. (In 2010, Mrs. Karp's mid-year review was not completed by CIGNA management.)

69.     Mrs. Karp's Annual Performance Reviews have routinely contained statements such as "Bretta is ready for higher level promotions" and that she was "ready to progress to the next level of management."

70.     Despite outstanding performance, however, Ms. Karp has had her overall performance assessment force ranked from "Exceptional" to "Solid" on one or more occasions.

**C.     Disparate Pay**

71.     In 2004, CIGNA implemented "career banding" companywide.  This resulted in the downgrading of some positions, including Mrs. Karp's.  Mrs. Karp was placed in career band 4 with a title of Provider Contracting Manager.

72.     On information and belief, similarly situated male employees across CIGNA were assigned to band 5, a more desirable band, during this process.

73.     Upon information and belief, Mrs. Karp has received less compensation than similarly situated male employees throughout her employment at CIGNA.

74.     On information and belief, men hired from outside of CIGNA receive higher

starting salaries than similarly situated female employees, regardless of the women's seniority at CIGNA.

75.     On information and belief, CIGNA's bonus system also results in lesser and discriminatory pay for female employees, because bonuses depend on subjective performance reviews by male managers.

76.     On information and belief, CIGNA's granting of stock options is based on a subjective appraisal by a predominantly male managerial/executive workforce.

### D.     Differential Treatment

77.     From 2001 to 2002, Mrs. Karp was classified as an Assistant Vice President of Contracting, which has an internal job salary grade of 55.  Mrs. Karp was upgraded to this salary level due to her extensive background and experience in the industry and the outstanding results she achieved.

78.     In 2003, CIGNA downgraded Mrs. Karp without explanation from salary grade 55 to grade 54, and downgraded her title to Senior Contract Negotiator.

79.     From 2004 to 2007, CIGNA placed Mrs. Karp in a "working lead" position.

80.     From 2004 to 2007, while functioning as a "working lead," Mrs. Karp continued as a Provider Contracting Manager/Field Contracting Lead for both the New Hampshire and Vermont territories, where, during this period, she received awards based on her superior performance.

81.     The male employee who resigned from the New Hampshire Market Lead position had the benefit of a staff.  However, CIGNA denied Mrs. Karp the same staffing resources when she performed the duties of the New Hampshire Market Lead position.

82.     In July 2010, a Provider Contracting Director ("PCD") Band 5 position became

available. Mrs. Karp notified her managers of her interest in the PCD position and participated in a series of telephone interviews.

83.     Provider Contracting Senior Director Mario Vangeli told Mrs. Karp that he thought that she was highly qualified and ready for the challenge, but that the selection "may come down to a style thing."  Mr. Vangeli also told her that General Manager Don Curry ("GM Curry") would be involved in the hiring process.

84.     Mrs. Karp completed the interviews for the PCD position with GM Curry and several other CIGNA managers.  On August 24, 2010, Mrs. Karp was notified that she would not receive the PCD position because she "came across as too aggressive" in the interviews.

85.     CIGNA gave the PCD position to Bill O'Donnell, a less-experienced male employee who had been with CIGNA for only two years.

86.     On September 15, 2010, Mr. O'Donnell informed Mrs. Karp that he was reassigning her largest market, Vermont (which is an important and strategic market for CIGNA), to Joe Wankerl, a younger, less qualified male CIGNA employee based in Connecticut. Mrs. Karp had successfully managed the Vermont market for more than 13 years. On information and belief, Mr. Wankerl had no experience in the Vermont market.

87.     Mr. O'Donnell also informed Mrs. Karp that the New Hampshire market which Mrs. Karp managed for over three years, during which she received awards for her superior performance, was being given to a male CIGNA employee, Mark Still.

88.     As a result of this reassignment, Mrs. Karp was left with Massachusetts and Rhode Island, which are "accommodation markets" made essentially obsolete by CIGNA's partnership in Massachusetts with Tufts Health Plan.

89.     Because Mrs. Karp's territories of Rhode Island and Massachusetts are considered

"accommodation markets," Manager Bill O'Donnell's assignments of these markets to Mrs. Karp were a step backward for her career.

90.      Simultaneously managing two "accommodation markets" adversely affected Mrs. Karp's compensation and earning potential.

91.      These reassignments of Mrs. Karp's desirable markets to less-qualified male employees were de facto, discriminatory demotions that deprived her of compensation, valuable professional experience, and opportunities for advancement.

**E.      Gender Hostility**

92.      During the meeting on September 15, 2010 at which Mr. O'Donnell told Mrs. Karp that he was reassigning the Vermont market to Mr. Wankerl, Mr. O'Donnell said that Mrs. Karp would be assigned "special projects" to compensate for the reassignment of the Vermont markets.

93.      When Mrs. Karp asked for specifics about these projects, however, Mr. O'Donnell refused to provide any details and accused Mrs. Karp of failing to develop "a good relationship with [him]."   Mr. O'Donnell also made veiled threats to Mrs. Karp, such as reminding her that he would be writing her year-end performance review.  Mr. O'Donnell's threats discouraged Mrs. Karp from asking further important questions concerning her career.

**VIII.   CLASS CLAIMS**

<u>**COUNT ONE**</u>

**Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. § 2000(e)-5(f), *et seq*., as amended**
**(On Behalf of the Class Representative and Class 1)**

94.      The Class Representative realleges and incorporates by reference each and every allegation contained in all of the paragraphs above as though fully set forth herein.

95.     Class 1 includes all women who are, or have been, employed by CIGNA in the United States and who experienced gender discrimination by CIGNA at any time during the applicable liability period.

96.     CIGNA has discriminated against the Class Representative and all members of Class 1 in violation of Title VII by treating them less favorably than similarly situated male employees and subjecting them to discriminatory denials of promotions; discriminatory denials of pay raises; discriminatory performance evaluations; disparate terms and conditions of employment; harassment; hostile work environments; and other forms of discrimination.

97.     CIGNA's conduct has been disparate, intentional, deliberate, willful and in callous disregard of the rights of the Class Representative and the members of Class 1.

98.     CIGNA's policies and practices have produced a disparate impact against the Class Representative and the members of Class 1 with respect to the terms and conditions of their employment.

99.     By reason of the continuous and persistent nature of CIGNA's discriminatory conduct throughout the employment of the Class Representative and the members of Class 1, the continuing violation doctrine applies to all violations alleged in this Complaint.

100.    By reason of the discrimination suffered at CIGNA, the Class Representative and the members of Class 1 are entitled to all legal and equitable remedies available under Title VII, including punitive damages and attorneys' fees, costs and expenses.

## COUNT TWO

### Gender Discrimination in Violation of Massachusetts General Law 151B
### (On Behalf of the Class Representative and Class 2)

101.    The Class Representative realleges and incorporates by reference each and every allegation contained in all of the paragraphs above as though fully set forth herein.

102.   Class 2 includes all women who are, or have been, employed by CIGNA in Massachusetts and who experienced gender discrimination by CIGNA at any time during the applicable liability period.

103.   CIGNA has discriminated against the Class Representative and all members of Class 2 in violation of MGL c. 151B by treating them less favorably than similarly situated male employees and subjecting them to discriminatory denials of promotions, discriminatory denials of pay raises, discriminatory performance evaluations, disparate terms and conditions of employment, harassment, hostile work environments, and other forms of discrimination.

104.   CIGNA's conduct has been disparate, intentional, deliberate, willful and in callous disregard of the rights of the Class Representative and the members of Class 2.

105.   CIGNA's policies and practices have produced a disparate impact against the Class Representative and the members of Class 2 with respect to the terms and conditions of their employment.

106.   By reason of the continuous and persistent nature of CIGNA's discriminatory conduct throughout the employment of the Class Representative and the members of Class 2, the continuing violation doctrine applies to all violations alleged in this Complaint.

107.   By reason of the discrimination suffered at CIGNA, the Class Representative and the members of Class 2 are entitled to all legal and equitable remedies available under MGL c. 151B, including punitive damages and attorneys' fees, costs and expenses.

## IX.   PRAYER FOR RELIEF

WHEREFORE, the Class Representative, on behalf of herself and the members of the classes whom she seeks to represent, requests the following relief:

A.   Certification of the case as a class action maintainable under Federal Rules of

Civil Procedure Rule 23(a) and 23(b)(2) and/or (b)(3), on behalf of Class 1 and Class 2, and designation of the Plaintiff as representative of these two classes and her counsel of record as class counsel;

B.    A declaratory judgment that CIGNA's employment policies, practices and/or procedures challenged herein are illegal and in violation of Title VII and MGL c. 151B;

C.    A permanent injunction against CIGNA and its partners, officers, owners, agents, successors, employees and representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, gender discrimination by CIGNA as set forth herein;

D.    An Order requiring CIGNA to initiate and implement programs that will (i) provide equal employment opportunities for female employees; (ii) remedy the effects of CIGNA's past and present unlawful employment policies, practices and/or procedures; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described in this Complaint;

E.    An Order requiring CIGNA to initiate and implement systems of assigning, training, transferring, compensating, and promoting female employees in a nondiscriminatory manner;

F.    An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in paragraphs D and E above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in paragraphs D and E above;

G.     An Order placing or restoring the Class Representative and the class members into the jobs they would now be occupying, but for CIGNA's discriminatory policies, practices and/or procedures;

H.     An Order directing CIGNA to adjust the wage rates and benefits for the Class Representative and the class members to the level that they would be enjoying but for CIGNA's discriminatory policies, practices and/or procedures;

I.     An award of back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits suffered by the Class Representative and the class members to be determined at trial;

J.     Any other appropriate equitable relief to the Class Representative and the class members;

K.     An award of compensatory, nominal and punitive damages to the Class Representative and the members of Class 1 and Class 2 in an amount not less than $100 million;

L.     An award of litigation costs and expenses, including reasonable attorneys' fees, to the Class Representative and the class members;

M.     Prejudgment interest;

N.     Such other and further relief as the Court may deem just and proper; and

O.     Retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendant has remedied the practices complained of herein and is determined to be in full compliance with the law.

## X.   DEMAND FOR JURY TRIAL

The Class Representative demands trial by jury of all issues triable as of right to a jury.

Respectfully submitted this 3rd day of March 2011.


_____/s/ David Sanford_____

David W. Sanford, D.C. Bar No. 457933
Kristen L. Walsh, D.C. Bar No. 495767
Catharine Edwards, V.A. Bar No. 78459
**SANFORD, WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, NW
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776


_____/s/ Kevin Kinne_____

Kevin Kinne, M.A. Bar No. 559004
Christopher M. Hennessey, M.A. Bar No. 654680
**COHEN KINNE VALICENTI & COOK LLP**
28 North Street, 3rd Floor
Pittsfield, MA 01201
**Telephone:** (413) 443-9399
**Facsimile:** (413) 442-9399

*Attorneys for Plaintiff-Class Representative*