**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BRETTA KARP on behalf of herself individually and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA HEALTHCARE, INC.,<br><br>Defendant. | Civil Action No.  4:11-cv-10361-FDS |

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................2

    A. The Parties' Pleadings ...................................................................................................2

    B. The Employee Handbook and Dispute Resolution Program Pleading .....................2

III. ARGUMENT ........................................................................................................................6

    A. The FAA Mandates Enforcement of Plaintiff's Agreement to Arbitrate ................6

        1. Plaintiff Entered Into a Valid Agreement with CGLIC .............................7

        2. CGLIC Is Entitled to Invoke the Arbitration Agreement, and Plaintiff Is Bound Thereby ..........................................................................8

        3. The Complaint Is Within the Scope of the Arbitration Agreement .............9

    B. This Matter Cannot Proceed as a Class Action ........................................................9

IV. CONCLUSION ..................................................................................................................14

**TABLE OF AUTHORITIES**

**Page**

**CASES**

AT&T Mobility LLC v. Concepcion,
 --- S. Ct. --, 2011 WL 1561956 (U.S. Apr. 27, 2011) ..................................................... *passim*

Anderson v. Comcast Corp.,
 500 F.3d 66 (1st Cir. 2007) ............................................................................................ 10

Banus v. Citigroup Global Markets, Inc.,
 No. 09 Civ. 7128, 2010 U.S. Dist. LEXIS 40072 (S.D.N.Y. Apr. 23, 2010) ........................ 13

Bercovitch v. Baldwin Sch., Inc.,
 133 F.3d 141 (1st Cir. 1998) ............................................................................................ 6

Boateng v. Gen'l Dynamics Corp.,
 473 F. Supp. 2d 241 (D. Mass. 2007) ...................................................................... 7, 8, 9

Bonnano v. Quizno's Franchise Co., LLC,
 No. 06-cv-02358, 2009 U.S. Dist. LEXIS 37702 (D. Colo. Apr. 20, 2009) ......................... 13

Campbell v. Gen'l Dynamics Corp.,
 407 F.3d 546 (1st Cir. 2005) ............................................................................................ 7

Circuit City Stores, Inc. v. Adams,
 532 U.S. 105 (2001) ......................................................................................................... 1

Deluca v. Bear Stearns & Co.,
 175 F. Supp. 2d 102 (D. Mass. 2001) ............................................................................... 8

Discover Bank v. Superior Court,
 113 P.3d 1100 (Cal. 2005) ............................................................................................. 12

Ellerbee v. Gamestop, Inc.,
 604 F. Supp. 2d 349 (D. Mass. 2009) ........................................................................... 7, 9

Feeney v. Dell, Inc.,
 454 Mass. 192 (2009) ............................................................................................... 11, 13

Gonzalez v. GE Grp. Admin'rs, Inc.,
 321 F. Supp. 2d 165 (D. Mass. 2004) ............................................................................ 8, 9

Green v. SuperShuttle International, Inc.,
 Civil No. 09-2129, 2010 U.S. Dist. LEXIS 95235 (D. Minn. Sept. 13, 2010) ....................... 11

Jock v. Sterling Jewelers, Inc.,
 725 F. Supp. 2d 444 (S.D.N.Y. 2010) .............................................................................. 11

**TABLE OF AUTHORITIES**
(continued)

**Page**

Kristian v. Comcast Corp.,
    446 F.3d 25 (1st Cir. 2006) ............................................................................ 10, 11, 12, 13

Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.,
    460 U.S. 1 (1983) .............................................................................................................. 9

Pomposi v. Gamestop, Inc.,
    No. 3:09-cv-340, 2010 WL 147196 (D. Conn. Jan. 11, 2010) ................................. 11, 13

Powershare, Inc. v. Syntel, Inc.,
    597 F.3d 10 (1st Cir. 2010) .............................................................................................. 6

Reid v. Supershuttle International, Inc.,
    No. 08-CV-4854, 2010 U.S. Dist. LEXIS 26831 (E.D.N.Y. Mar. 22, 2010) ................ 13

Skirchak v. Dynamics Research Corp.,
    508 F.3d 49 (5th Cir. 2007) ............................................................................................ 10

Soto-Alvarez v. Apartment Investment & Management Co.,
    561 F. Supp. 2d 228 (D.P.R. 2008) .................................................................................. 8

Soto v. State Chemical Sales Co. International, Inc.,
    719 F. Supp. 2d 189 (D.P.R. 2010) .................................................................................. 8

Stolt-Nielsen S.A. v. AnimalFeeds International Corp.,
    130 S. Ct. 1758 (2010) ................................................................................................... 10

Vilches v. The Travelers Co., Inc.,
    No. 10-2888, 2011 WL 453304 (3d Cir. Feb. 9, 2011) .................................................. 11

Warfield v. Beth Israel Deaconness Medical Ctr.,
    454 Mass. 390 (2009) ................................................................................................... 1, 2

**STATUTES**

9 U.S.C. § 1, *et seq* ................................................................................................................ 6

9 U.S.C. § 4   ........................................................................................................................... 1

15 U.S.C. § 7001(a) ................................................................................................................ 8

42 U.S.C. § 1981a................................................................................................................. 13

**RULES**

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 1, 14

Defendant Connecticut General Life Insurance Company[1] ("CGLIC" or "the Company"), by its undersigned counsel, hereby submits this memorandum of law in support of its Motion to Compel Arbitration pursuant to 9 U.S.C. § 4, and dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1).

**I.   INTRODUCTION**

Plaintiff Bretta Karp ("Plaintiff") brings this purported class action under Title VII of the Civil Rights Act and M.G.L. c. 151B, the Massachusetts anti-discrimination law. Plaintiff alleges that CGLIC subjected her and an unspecified number of current and former female employees to gender discrimination. Plaintiff's Class Action Complaint ("Complaint") ¶¶ 3, 20.

In 1998, and then again in 2005, Plaintiff executed an arbitration agreement with CGLIC in which she explicitly agreed to submit employment claims to final, binding arbitration, including specifically claims arising under Title VII and its state-law analogues (i.e., M.G.L. c. 151B). The Company's arbitration policy and its arbitration rules and procedures also include a class or collective action waiver and, therefore, require Plaintiff to proceed to arbitration on an individual basis only. Despite agreeing to binding arbitration, including a class action waiver, as a term and condition of her employment, Plaintiff filed the instant action and purports to bring a putative class action in breach of her agreement.

The Federal Arbitration Act ("FAA") and Supreme Court precedent mandate that arbitration agreements be enforced according to their terms, AT&T Mobility LLC v. Concepcion, --- S. Ct. ---, No. 09-0893, 2011 WL 1561956, at *4 (U.S. Apr. 27, 2011), and claims under both Title VII and c. 151B are arbitrable. See, e.g., Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 122-23 (2001); Warfield v. Beth Israel Deaconness Med. Ctr., 454 Mass.

---

[1]   Plaintiff's employer, CGLIC, is incorrectly identified as "Cigna Healthcare, Inc." in the Complaint.

1

390, 395 (2009).  Accordingly, CGLIC respectfully requests that the Court compel arbitration of Plaintiff's individual claims because Plaintiff and the Company entered into a binding arbitration agreement and Plaintiff's claims fall within the scope of that agreement.  Furthermore, because Plaintiff's arbitration agreement explicitly precludes her from bringing class, collective or representative actions, she is required to arbitrate her claims individually, and not on a class basis.

## II.   FACTUAL BACKGROUND

### A.   The Parties' Pleadings

In June 1997, CGLIC hired Plaintiff as a Director of Contracting.  Declaration of Marjorie Stein ("Stein Decl.") ¶ 18.  Plaintiff has held management positions throughout her tenure at CGLIC, and currently oversees three "direct reports" and has five other employees who indirectly report to her.[2]  Compl. ¶¶ 56-59, 63-64.  Her job duties include analyzing and negotiating contracts that govern the rates and terms of CGLIC's payments to its network providers.  Id. ¶ 63.  Plaintiff also has a Masters of Business Administration degree.  Id. ¶ 57.  Her current annual salary is $153,169.14.  Stein Decl. ¶ 25.  In March 2011, Plaintiff received a bonus payment in the amount of $43,743.  Id.

CGLIC is a subsidiary entity that is ultimately owned by CIGNA Corporation.  Stein Decl. ¶¶ 4-5.  Plaintiff has never been employed by CIGNA Healthcare, Inc., the named defendant.  Id. ¶¶ 4-5, 18.

### B.   The Employee Handbook and Dispute Resolution Program Pleading

In February 1998, the Company provided Plaintiff with copies of its employment policies, including a copy of its Employment Dispute Arbitration Policy then in effect.  Id. ¶ 19.  Plaintiff acknowledged receipt of such on February 17, 1998.  Id., Exh. F.

---

[2]   CIGNA assumes the truth of the allegations in the Complaint for purposes of this motion only.

Thereafter, in November 2005, CIGNA distributed an updated Employee Handbook (the "Employee Handbook") to the employees of CIGNA Corporation affiliated entities, including CGLIC. Id. ¶¶ 6-7. The Employee Handbook describes the Company's Employment Dispute Resolution Program ("EDRP"). The EDRP consists of two processes—an internal dispute resolution component through which employees can raise concerns about a broad range of workplace issues, and an external component that requires employees to arbitrate specified employment-related disputes that arise between the employee and the Company. Id. ¶¶ 8-10.

The Employee Handbook makes clear that, by accepting employment, compensation and/or benefits from a CIGNA Company (including CGLIC), an individual agrees to arbitrate "serious employment-related disagreements" between himself or herself and the Company, as a term and condition of employment. Id. ¶ 10, Exh. A at 25-26. The Employee Handbook also identifies the types of disputes that the arbitration policy covers, including, but not limited to, employment discrimination claims under Title VII and corollary state statutes, and directs employees to the Company's Employment Dispute Arbitration Policy (the "Arbitration Policy") and Employment Dispute Arbitration Rules and Procedures (the "Rules and Procedures"). Id.

### C.   The Arbitration Policy and Rules and Procedures

Pursuant to the Arbitration Policy, "arbitration by a neutral third-party is the required and final means for the resolution of any employment related legal claim not resolved by the CIGNA Companies' internal dispute resolution process." Stein Decl., Exh. B at 1. This agreement to arbitrate is a "term and condition of the employment relationship between an employee and the Company." Id.

The Arbitration Policy explicitly applies to "claims, demands, disputes, controversies or actions under Title VII of the Civil Rights Act of 1964 . . . and any other federal, state or local

3

statute, regulation, ordinance, or common law doctrine, regarding employment discrimination, retaliation, . . . [or] conditions of employment." Id. at 2. Both the Arbitration Policy and the Rules and Procedures clearly and explicitly prohibit class or collective actions:

> No class-wide arbitrations are allowed under the CIGNA Companies' Employment Dispute Arbitration Policy or the Rules and Procedures. The arbitrator has no jurisdiction to certify any group of current or former employees, or applicants for employment, as a class in any arbitration proceeding.
>
> * * *
>
> Each party seeking resolution of its, his or her claims pursuant to an agreement to arbitrate under these Rules and Procedures must proceed individually. There shall be no class or representative actions permitted. An Arbitrator shall have no authority to hear claims of or award damages to any person or entity who has not initiated arbitration and selected an arbitrator in accordance with these Rules and Procedures. Also, an arbitrator shall not have authority to consolidate claims or consider individual claims collectively on the ground that such actions promote efficiency or that the individual damages may be too small to proceed economically, except when there is an express agreement between the Company and the employees in writing, or on the stenographic record of the particular arbitration proceeding for which the agreement to proceed collectively is made.

See Stein Decl., Exh. B at 3 (Arbitration Policy); Exh. C at 2 (Rules and Procedures).

Finally, the Rules and Procedures provide for a series of processes that permit employees, including Plaintiff, to pursue their individual claims in arbitration and obtain the same individual relief they could obtain in a court of law, including, *inter alia*:

- Applying the same statute(s) of limitations applicable to claims brought in court;
- company payment of arbitration costs (except for a modest filing fee and expenses for depositions taken by the employee);
- the opportunity to be represented by counsel;
- requiring that the arbitrator be a neutral party, and be knowledgeable and experienced in employment law and the resolution of employment disputes;
- the opportunity to select an arbitrator under the American Arbitration Association's ("AAA") struck panel method;

4

- requiring the arbitrator to follow applicable statutory and case law;

- requiring the arbitrator to apply the same burdens of proof applicable under federal, state, or local law;

- empowering the arbitrator to award all equitable and legal remedies that would be available in court under applicable law, including an award of attorney fees to a prevailing plaintiff, as provided by law;

- the opportunity for discovery, including depositions and the exchange of documents and exhibits;

- requiring a written decision setting forth the arbitrator's reasoning; and

- the opportunity for judicial review and confirmation in accordance with the FAA.

See id. ¶ 16, Exh. C.

### D.  Plaintiff Accepted and Agreed to CGLIC's Arbitration Policy

At the time the Company updated the Employee Handbook in November 2005, it circulated to all employees a web page that contained a hyperlink to an Affirmation Form. Stein Decl. ¶ 20. All employees (including Plaintiff) were required, as a term and condition of employment, to complete the Affirmation Form and assent to the terms set forth in the Employee Handbook by typing their full name in a blank box and clicking a button denoted "Yes." Id. ¶ 21. Once an employee clicked on the "Yes" button, the full name, time, and date of the employee's act was electronically memorialized. Id.

The Company's electronic records reflect that Plaintiff executed the Affirmation Form on November 22, 2005 at 8:22:19 a.m. Id. ¶ 22. By electronically executing the Affirmation Form, Plaintiff acknowledged, in pertinent part:

> I acknowledge that I have received or reviewed the updated (November 2005) CIGNA Employee Handbook, which outlines the policies that are available and applicable to all of the CIGNA companies' employees.
>
> * * *

5

> I agree any dispute between CIGNA and me arising out of or relating to my candidacy for employment, employment, or termination of employment with CIGNA (with the exception of workers compensation claims ERISA claims and administrative agency charges) shall be resolved under CIGNA's Employment Dispute Arbitration Program which includes final mandatory binding arbitration.
>
> * * *
>
> I understand that any such Arbitration will be conducted pursuant to the CIGNA Employee Dispute Arbitration Rules and Procedures in effect at the time such arbitration is commenced.

Id. ¶ 23, Exh. G.

### III. ARGUMENT

Notwithstanding Plaintiff's express agreement to arbitrate her individual employment claims on a non-class basis, including specifically claims under Title VII and state statutes governing employment discrimination (such as c. 151B), she filed the instant putative class action on March 4, 2011. Through this motion, CGLIC seeks to enforce its contractual rights and compel Plaintiff to arbitrate her individual claims on a non-class basis and dismiss the proceedings in this Court.

#### A. The FAA Mandates Enforcement of Plaintiff's Agreement to Arbitrate

The FAA was enacted "in response to widespread judicial hostility to arbitration agreements." AT&T Mobility, 2011 WL 1561956, at *4. It requires courts to enforce arbitration agreements, reflecting the federal policy strongly favoring arbitration as a method of alternative dispute resolution. 9 U.S.C. § 1, *et seq.*; see AT&T Mobility, 2011 WL 1561956, at *8 ("[T]he 'principal purpose' of the FAA is to 'ensure[e] that private arbitration agreements are enforced according to their terms.'"); Powershare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010) ("federal law undeniably includes a policy favoring arbitration"); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 148 (1st Cir. 1998) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration").

6

"In line with these principles, courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." AT&T Mobility, 2011 WL 1561956, at *5 (citations omitted). The First Circuit applies a four-part test to determine whether to enforce an arbitration agreement. The party seeking arbitration must prove that (1) a valid agreement to arbitrate exists; (2) the party is entitled to invoke the arbitration clause; (3) the non-moving party is bound by the arbitration clause; and (4) the claim asserted comes within the clause's scope. Campbell v. Gen'l Dynamics Corp., 407 F.3d 546, 552 (1st Cir. 2005). Each of these requirements is satisfied in this case.

### 1. Plaintiff Entered Into a Valid Agreement with CGLIC

For the "validity" inquiry, courts generally "apply ordinary state-law principles that govern the formation of contracts." Boateng v. Gen'l Dynamics Corp., 473 F. Supp. 2d 241, 247-248 (D. Mass. 2007). "The essential question is whether Plaintiff accepted the arbitration agreement," and whether she "entered into a valid, enforceable agreement to arbitrate [her] claims." Ellerbee v. Gamestop, Inc., 604 F. Supp. 2d 349, 354 (D. Mass. 2009).

In this context, an employer has the "relatively light burden" of showing that it provided "some minimal level of notice sufficient to apprise [plaintiff] that continued employment would effect a waiver of the right to pursue the claim in a judicial forum." Campbell, 407 F.3d at 555; Ellerbee, 604 F. Supp. 2d at 354 ("Plaintiff's continued employment constitutes adequate consideration for the [arbitration] contract.").

There is undoubtedly a valid agreement here. As early as February 1998, Plaintiff acknowledged receipt of, and agreed to be bound by, CGLIC's arbitration policy then in effect. Stein Decl. ¶ 19. In November 2005, Plaintiff was provided a copy of the updated Employee Handbook. Id. ¶¶ 7, 20-22. Both the Employee Handbook and the Arbitration Policy referenced therein state in no uncertain terms that, by accepting employment, compensation or benefits from

the Company, an employee agrees to arbitrate employment-related disputes, including employment discrimination claims arising under Title VII and state law corollary statutes. Id. ¶¶ 10, 13; Exh. A at 25-26, Exh. B at 1-2. At the same time that Plaintiff received the updated Employee Handbook, she reviewed and executed an electronic Affirmation Form. Id. ¶ 22. By clicking "Yes" on this Affirmation Form, Plaintiff expressly agreed that any disputes arising out of her employment would be resolved in final, mandatory binding arbitration governed by the Rules and Procedures in effect at the time arbitration commences. Id. ¶ 23, Exh. G. The Arbitration Policy and the Rules and Procedures also expressly prohibit class or representative actions. Id. ¶¶ 13, 15; Exhs. B and C.

Against this factual backdrop, there can be no legitimate dispute that Plaintiff—an experienced manager and MBA recipient whose job involves analyzing and negotiating contracts—entered into a binding agreement with CGLIC to submit her individual claims like those presented in the Complaint to arbitration. See Boateng, 473 F. Supp. 2d at 248-49 (valid arbitration agreement existed where plaintiff's execution of agreement was a condition of her employment and defendant demonstrated that plaintiff received agreement and executed acknowledgement form); Gonzalez v. GE Grp. Admin'rs, Inc., 321 F. Supp. 2d 165, 169 (D. Mass. 2004) (arbitration agreement was valid where plaintiff was notified of agreement and signed acknowledgement form indicating he understood its terms); Deluca v. Bear Stearns & Co., 175 F. Supp. 2d 102, 115-16 (D. Mass. 2001) (arbitration agreement was valid where plaintiff was a sophisticated businesswoman with a college degree and was given an opportunity to consider the terms of the agreement); see also 15 U.S.C. § 7001(a) (electronic execution of an agreement is valid).

## 2. CGLIC Is Entitled to Invoke the Arbitration Agreement, and Plaintiff Is Bound Thereby

While there is little case law discussing the second or third Campbell requirements, they are certainly met here. The Employee Handbook and the Arbitration Policy expressly apply to CGLIC, meaning CGLIC may invoke those provisions. See Soto v. State Chem. Sales Co. Int'l, Inc., 719 F. Supp. 2d 189, 194 (D.P.R. 2010) (finding that employer was entitled to invoke arbitration agreement because it was a party to agreement); Soto-Alvarez v. Apartment Inv. & Mgmt. Co., 561 F. Supp. 2d 228, 231 (D.P.R. 2008) (same). Likewise, because Plaintiff electronically executed the Affirmation Form, she is bound by it. Id. Accordingly, these two Campbell requirements are satisfied.

## 3. The Complaint Is Within the Scope of the Arbitration Agreement

Finally, the allegations in the Complaint unquestionably fall within the scope of the parties' arbitration agreement. As set forth in the Employee Handbook and Arbitration Policy, Plaintiff agreed to arbitrate "serious employment-related disagreements and problems," defined to include, in pertinent part, "claims, demands, disputes, controversies or actions under Title VII of the Civil Rights Act of 1964 . . . and any other federal, state or local statute, regulation, ordinance, or common law doctrine, regarding employment discrimination, retaliation, ... [or] conditions of employment." Stein Decl. ¶¶ 10, 13; Exh. A at 25-26, Exh. B at 1-2.

In the Complaint, Plaintiff asserts claims under Title VII and M.G.L. c. 151B, a "state . . . statute . . . regarding employment discrimination," and thus the claims asserted are squarely within the scope of the Arbitration Policy. See Ellerbee, 604 F. Supp. 2d at 352-53 (arbitration agreement that defined "Covered Claims" to include discrimination claims applied to action under c. 151B); Gonzalez, 321 F. Supp. 2d at 170-71 (Title VII and c. 151B within the scope of an arbitration agreement that specifically identified employment discrimination claims as

arbitrable); see also Boateng, 473 F. Supp. 2d at 247 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

Because the claims in the Complaint fall within the scope of a valid arbitration agreement, CGLIC respectfully requests that the Court compel Plaintiff to arbitrate her individual claims.

### B.  This Matter Cannot Proceed as a Class Action

The Supreme Court recently held that when an arbitration agreement is governed by the FAA (as is the one at issue here), class wide arbitration is *forbidden* unless it is explicitly permitted under the agreement. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758, 1776 (2010). Here, the Arbitration Policy and the Rules and Procedures not only fail to permit class arbitration, but both expressly and unequivocally prohibit this case from proceeding as a class action. As set forth in the Arbitration Policy:

> *No class-wide arbitrations are allowed* under the CIGNA Companies' Employment Dispute Arbitration Policy or the Rules and Procedures. The arbitrator has no jurisdiction to certify any group of current or former employees, or applicants for employment as a class in any arbitration proceeding.

Stein Decl. ¶ 13, Exh. B at 1-2 (Arbitration Policy) (emphasis added).

Similarly, the Rules and Procedures state the following, in pertinent part:

> Each party seeking resolution of its, his or her claims pursuant to an agreement to arbitrate under these Rules and Procedures must proceed individually. There shall be no class or representative actions permitted. An Arbitrator shall have no authority to hear claims of or award damages to any person or entity who has not initiated arbitration and selected an arbitrator in accordance with these Rules and Procedures. Also, an arbitrator shall not have authority to consolidate claims or consider individual claims collectively on the ground that such actions promote efficiency or that the individual damages may be too small to proceed economically, except when there is an express agreement between the Company and the employees in writing, or on the stenographic record of the particular arbitration proceeding for which the agreement to proceed collectively is made.

Id. ¶ 15, Exh. C (Rules and Procedures); see also Exh. D.

This plain language controls and precludes Plaintiff from pursuing her claims on a class basis.[3] As the Supreme Court made clear in AT&T Mobility, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." 2011 WL 1561956, at *8. In contrast to arbitration on an individual basis, "[a]rbitration is poorly suited to the higher stakes of class litigation." Id. at *12. Here, the Arbitration Policy and Rules and Procedures recognize this reality. By their express terms, they both prohibit the type of class claims Plaintiff purports to assert in the Complaint. Because fidelity to the terms of an arbitration agreement is the paramount concern of the FAA, this case cannot proceed as a class action. Id. at *8; see also Vilches v. The Travelers Co., Inc., No. 10-2888, 2011 WL 453304, at *4-6 (3d Cir. Feb. 9, 2011) (finding collective action waiver of FLSA claims in arbitration policy enforceable); Jock v. Sterling Jewelers, Inc., 725 F. Supp. 2d 444, 449-50 (S.D.N.Y. 2010) (arbitration in an employment discrimination case could not proceed as a class action where agreement was silent as to class arbitration and there was no evidence that parties intended to arbitrate class claims); Green v. SuperShuttle Int'l, Inc., Civil No. 09-2129, 2010 U.S. Dist. LEXIS 95235, at *7-9 (D. Minn. Sept. 13, 2010) (enforcing class arbitration waiver in FLSA case where plain language of arbitration agreement precluded class claims); Pomposi v. Gamestop, Inc., No. 3:09-cv-340, 2010 WL 147196, at *4, *6-8 (D. Conn. Jan. 11, 2010) (same).

---

[3] Whether the arbitration agreement forbids class arbitration must be decided by this Court, not the arbitrator. When there is no ambiguity as to the class prohibition in the arbitration agreement, the question of whether that clause "may be enforced under the FAA is for the court." Skirchak v. Dynamics Research Corp., 508 F.3d 49, 56 (5th Cir. 2007); compare Kristian v. Comcast Corp., 446 F.3d 25, 53-54 (decision was for the court "because of the clarity of the prohibition against class arbitration") with Anderson v. Comcast Corp., 500 F.3d 66, 72 (1st Cir. 2007) (ambiguity as to the term "unless your state's laws provide otherwise" in class arbitration clause was for arbitrator to resolve). The class bar here is clear, and brooks no uncertainties or exceptions: "*No class-wide arbitrations are allowed.*" The issue is therefore ripe for decision now, in this Court.

Plaintiff may attempt to circumvent the plain language of the Arbitration Policy and the Rules and Procedures by relying upon two decisions in the consumer class action context that pre-date the Supreme Court's recent decision in AT&T Mobility—Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006) and Feeney v. Dell, Inc., 454 Mass. 192 (2009). AT&T Mobility, however, abrogates both decisions, thus rendering their holdings inapplicable here. Moreover, even if AT&T Mobility had not been decided, Kristian and Feeney are inapposite because the policy rationale behind those cases does not exist in the employment context.

In AT&T Mobility, the respondents were consumers who alleged that AT&T violated California consumer protection statutes by charging sales tax on mobile phones that had been advertised as free. The respondents' contract with AT&T—like Plaintiff's agreement to arbitrate in this case—provided for arbitration of all disputes between the parties, but did not permit classwide arbitration. AT&T Mobility, 2011 WL 1561956, at *2. The agreement between the parties also authorized AT&T to make unilateral amendments to the contract, which it did on several occasions. Id. Relying on the California Supreme Court's decision in Discover Bank v. Superior Court, 113 P.3d 1100 (Cal. 2005), the District Court found the arbitration provision was unconscionable because AT&T had not shown that individual arbitration adequately substituted for the deterrent effects of class actions.[4] The Ninth Circuit affirmed the District Court's denial of AT&T's motion to compel arbitration.

In reversing the Ninth Circuit, the Supreme Court noted that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Id. Relying in large part on the fundamental principle that

---

[4] In Discover Bank, the California Supreme Court held that class action waivers in consumer arbitration agreements are unconscionable in cases that involved adhesion contracts, nominal amounts of damages, and allegations of consumer fraud because such waivers, in violation of California law, effectively permit a defendant to exculpate itself against its own fraud. Discover Bank, 113 P.3d at 1110.

12

the FAA requires courts to enforce arbitration agreements according to their terms, the Supreme Court held that the FAA preempted the ruling in Discover Bank that California unconscionability law is a generally applicable defense to contract formation.

The Supreme Court's decision in AT&T Mobility makes it clear that it is impermissible to create categorical judicial and legal exceptions that trump parties' contractual agreements to arbitrate. See 2011 WL 1561956, at *5 (arbitration agreements cannot be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue"). This is precisely what the courts in Kristian and Feeney did when they relied on a "vindication of statutory rights" theory to strike down class arbitration waivers.[5] The courts in Kristian and Feeney determined that, in light of the realities of antitrust and consumer class litigation (i.e., cases where there is a gross disparity between litigation costs and monetary recovery for individuals), a class arbitration waiver would effectively prohibit plaintiffs from bringing such claims. Kristian, 446 F.3d at 58-60; Feeney, 454 Mass. at 205. Unwilling to accept this outcome, the courts declined to enforce class arbitration bars on the basis that they effectively prevented the plaintiffs from vindicating their right to pursue antitrust claims, Kristian, 446 F.3d at 64, and violated the public policy of Massachusetts favoring class actions, Feeney, 454 Mass. at 205. Because Kristian and Feeney run contrary to AT&T Mobility, the holdings in those cases are inapplicable here.

Moreover, the policy concerns underlying the courts' decisions in Kristian and Feeney are absent in the employment discrimination context. Here, Plaintiff asserts claims under Title VII and M.G.L. c. 151B. Under both statutes, a claimant can obtain broad and substantial relief:

---

[5] In ruling that the class arbitration bar was unenforceable, the First Circuit in Kristian stated that its holding was consistent with those of other courts, including the California Supreme Court's decision in Discover Bank that the Supreme Court overturned in AT&T Mobility. Kristian, 446 F.3d at 59-60.

back pay, front pay, compensatory damages, punitive damages, statutory interest, and attorneys' fees and costs. While emotional distress, as well as compensatory and punitive damages under Title VII are limited to $300,000, potential front and back pay awards under that law are not limited. See 42 U.S.C. § 1981a. Moreover, damage awards under M.G.L. c. 151B are totally uncapped, even for emotional distress or punitive damages. See M.G.L. c. 151B, § 9. Thus, in sharp contrast to Kristian and Feeney, the recovery Plaintiff (or any similarly situated individual) might obtain under these laws is substantial, and a class action bar will have no recognizable effect on the vindication of Plaintiff's rights.[6]

---

[6] That an individual employment discrimination claimant (like Plaintiff) may obtain a large verdict is not just a matter of surmise; it is an empirical fact. A survey of 57 jury verdicts awarded since 2000 from this District Court and Massachusetts state courts show that the average verdict for an employment discrimination case is *$848,253*. See Defendant's Request for Judicial Notice, submitted concurrently, at ¶ 1; Declaration of Sarah Green, Esq. ("Green Decl.") at ¶¶ 3-10. This starkly contrasts with Kristian and Feeney, where the claimants could expect no more than a few hundred to a few thousand dollars; an amount so low that no single person or attorney would realistically bring a claim. See 446 F.3d at 58; 454 Mass. at 204. Since "a plaintiff with a colorable $300,000 [or $800,000] claim [plus attorney fees on top of that] will undoubtedly find at least one lawyer willing to prosecute his case on a contingency basis" (Reid v. Supershuttle Int'l, Inc., No. 08-CV-4854 , 2010 U.S. Dist. LEXIS 26831, *9 (E.D.N.Y. Mar. 22, 2010)), an individual claimant can clearly vindicate her rights under the discrimination laws. See id.; Banus v. Citigroup Global Markets, Inc., No. 09 Civ. 7128, 2010 U.S. Dist. LEXIS 40072, *31 n.61 (S.D.N.Y. Apr. 23, 2010) ($45,675 sufficiently large for claimant to vindicate her rights); Pomposi, 2010 U.S. Dist. LEXIS 1819, at *18-23 ($11,000 amount in controversy); Bonnano v. Quizno's Franchise Co., LLC, No. 06-cv-02358, 2009 U.S. Dist. LEXIS 37702, *50-51 (D. Colo. Apr. 20, 2009) ($60,000 to $75,000 sufficient). In addition, private class actions are rarely part of the enforcement of c. 151B or Title VII. In 2009 alone, *15,231* employment discrimination cases were filed nationally. See Request for Judicial Notice ¶ 2; Green Decl. ¶ 11. In this District, 1,746 employment discrimination cases were filed between 2000 and 2010. See Request for Judicial Notice ¶ 3; Green Decl. ¶¶ 12-15, Exh. A. Of these 1,746 cases, only *9* were brought as class actions – just *0.51 percent*. See Request for Judicial Notice ¶ 5; Green Decl. ¶¶ 20-23. Further, of these, only 2 were actually certified. See id. This once more contrasts with Kristian and Feeney, which arose in the consumer rights milieu, where (given the small stakes) those pre-AT&T Mobility courts concluded that class actions are necessary. Statistics are illustrative here as well: of the 1,073 class / collective actions filed in this District from 2000 to 2010, only 9 of these (less than 0.84%) were employment discrimination matters. See Request for Judicial Notice ¶¶ 4-5; Green Decl. ¶¶ 16-23, Exh. B.

14

## IV. CONCLUSION

For the foregoing reasons, CGLIC respectfully requests that the Court enforce the plain language of the Arbitration Policy, order that Plaintiff submit her Complaint to individual arbitration on a non-class basis and dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | CONNECTICUT GENERAL LIFE INSURANCE COMPANY, |
|  | By its attorneys, |
|  | /s/ David C. Casey |
|  | David C. Casey (BBO No. 077260) |
|  | Stephen T. Melnick (BBO No. 667323) |
|  | **LITTLER MENDELSON, P.C.** |
|  | One International Place, Suite 2700 |
|  | Boston, MA 02110 |
|  | Tel: 617.378.6000 |
|  | Fax: 617.737.0052 |
|  | dcasey@littler.com |
| Dated: May 16, 2011 | smelnick@littler.com |

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 16th day of May, 2011 the foregoing document was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

                                                /s/ David C. Casey  
                                                David C. Casey