## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS WORCESTER DIVISION

| | |
|---|---|
| BRETTA KARP, on behalf of herself, Individually and all others similarly situated, Plaintiff, v. CIGNA HEALTHCARE, INC., Defendant. | Case No.: 4:11-cv-10361 (FDS) |

## PLAINTIFF BRETTA KARP'S OPPOSITION TO DEFENDANT CIGNA HEALTHCARE'S MOTION TO DISMISS AND TO COMPEL ARBITRATION

### INTRODUCTION

Plaintiff Bretta Karp, a longtime employee of one or more subsidiaries of CIGNA Corporation,[1] filed this action under Title VII of the Civil Rights Act of 1964 and M.G.L. ch. 151B to remedy a pattern and practice of systemic sexual discrimination against herself and hundreds of similarly situated CIGNA employees. Relying on the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and an electronic receipt executed by Ms. Karp, CIGNA argues that Ms. Karp not only agreed to arbitrate her discrimination claims but also to waive her class claims. Defendant therefore moves the Court to dismiss Ms. Karp's claims and to compel arbitration on

---

[1]  Ms. Karp named CIGNA Healthcare, Inc., a CIGNA Corporation subsidiary, as the Defendant, based on information available to her and to counsel at the time. Defendant suggests in its Corporate Disclosure Statement (Dkt. No. 9) that Plaintiff should have sued CGLIC. Ms. Karp has not yet had an opportunity to determine whether CGLIC is the real party in interest. For purposes of this opposition, Plaintiff identifies Defendant as "CIGNA." If Ms. Karp confirms that CGLIC (or another CIGNA subsidiary) should be named as Defendant, she will amend her Complaint accordingly.

an individual basis.   Because CIGNA ignores critical facts and pertinent law fatal to its argument, the Court should deny CIGNA's motion in its entirety.

As the facts set forth below and in Ms. Karp's attached Affidavit demonstrate, Ms. Karp never  agreed to waive *class* claims against CIGNA.   While it is true that after being repeatedly threatened by the Company she did acknowledge that CIGNA had a policy requiring arbitration of statutory discrimination claims, this is as far as her acknowledgment goes.   The facts presented by CIGNA itself establish that the Company never notified Ms. Karp that CIGNA's arbitration policy and procedures forbade class claims.   CIGNA never mentioned a class waiver in its multiple emails to Ms. Karp asking her to acknowledge its arbitration policy, and it never provided her with any documents disclosing that the parent company had recently inserted the class waiver into its arbitration policy and procedures.   At most, Ms. Karp may have been able to learn of the class waiver only through her own search for arbitration documents on the corporate website.   Hence, there was no meeting of the minds between CIGNA and Ms. Karp regarding the class waiver, and no contract containing the waiver was formed.   Alternatively, it would be unconscionable to enforce the class waiver because CIGNA failed to provide Ms. Karp with fair and appropriate notice of the waiver provision.

But even assuming Ms. Karp waived the right to pursue class claims before an arbitrator, moreover, that agreement is of no effect.   Only by litigating on a class basis can Ms. Karp and similarly situated co-workers vindicate their statutory rights to be free of pattern and practice or disparate impact discrimination only by litigating on a class basis.   Under United States Supreme Court precedent, any purported arbitration agreement in derogation of the substantive right to pursue those claims is void.

Absent a valid waiver of class claims, the Court should retain jurisdiction of Ms. Karp's class action, rather than sending the case to class arbitration. The First Circuit has held that, because the availability of class procedures is fundamental to the character of a company's arbitration scheme, courts should not sever an invalid class waiver from an arbitration agreement as a whole, unless the agreement contains a savings clause that refers specifically to the class waiver.  CIGNA's Arbitration Policy contains only a general savings clause that does not mention the class waiver.  Rather than severing the class waiver, therefore, the Court should rule the entire arbitration scheme inapplicable to Ms. Karp, deny CIGNA's Rule 12(b)(1) motion, and proceed to hear her class action.  Alternatively, if the Court finds the class waiver severable, the Court should deny CIGNA's motion in part and order the Company to arbitrate Ms. Karp's class claims.

To the extent that the Court finds the existing record before it is inadequate to determine whether an agreement was reached as to the class action bar or whether Ms. Karp can vindicate her statutory rights through CIGNA's arbitration scheme, it should defer a ruling on Defendant's motion until Plaintiff has had the opportunity to conduct discovery.  There are numerous facts that may be relevant to resolution of Defendant's motion that Ms. Karp does not have in her possession.  Plaintiff has had no opportunity to take discovery on any of these issues. For this reason alone, the Court should deny Defendant's motion.

The Supreme Court's narrow decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), on which CIGNA heavily relies, does not affect this case.  The Court in *AT&T Mobility* held only that the FAA preempted a judge-made California rule deeming class-arbitration waivers in most consumer contracts unconscionable and unenforceable. *Id.* at 1746, 1753.  The Court did not disturb, or even touch upon, Supreme Court precedent, upon which Ms.

Karp relies, all of which hold that state contract law governs the formation and construction of arbitration agreements in the first instance, and that the FAA does not allow enforcement of arbitration agreements that would limit substantive statutory rights.

For all of these reasons, the Court should deny CIGNA's motion to dismiss and compel arbitration.

## PROCEDURAL HISTORY

On March 3, 2011, Plaintiff Bretta Karp filed this lawsuit, on behalf of herself and all similarly-situated female employees, seeking damages and back pay arising from CIGNA's pattern and practice of systemic sexual discrimination against herself and similarly situated female employees. (Dkt. No. 1.)  On May 16, 2011, Defendant responded to Plaintiff's complaint by filing a Motion to Dismiss and Compel Arbitration ("Motion to Compel") (Dkt. No. 4).[2]  To date, no discovery has occurred and no Scheduling Order has been entered in this case.

## FACTUAL BACKGROUND

Ms. Karp has been employed by CIGNA since June of 1997, when the Company acquired Healthsource, Inc. ("Healthsource").  *See*  Affidavit of Bretta Karp ("Karp Aff.") at ¶ 2. As a Provider Contract Manager, Ms. Karp is responsible for managing contracting with hospitals and other health providers. *Id. at 3.*  As such, she has no responsibility for drafting contracts or coming up with contract terms.  *Id.*  Ms. Karp has remained in CIGNA's employ from June 1997 to present.  During this time, Ms. Karp has been a consistently high performer, earning several performance awards.

In approximately February 1998, CIGNA provided Ms. Karp with a copy of the "CIGNA Healthcare Division:  Employment Dispute Arbitration Policy" (1998 Policy).  Def's Mot. at 2 &

---

[2]  Defendant concurrently filed a Request for Judicial Notice.  (Dkt. No. 7).

Ex. E.  Nowhere in the 1998 Policy did CIGNA explain that Company employees were required to forfeit their right to bring a class action against the Company as a condition of their employment and, on information and belief, the Company did not require employees to waive their class action rights at that time.

On February 17, 1998, Ms. Karp signed a receipt acknowledging that she had received copies of certain employee policies, including: the "Healthsource Absenteeism and Tardiness Policy, the CIGNA Healthsource Job Posting Policy, the CIGNA Healthcare Overtime Policy and the CIGNA Healthcare Employment Dispute Arbitration Policy ("Arbitration Policy"). Def.'s Mot. at 5-6 & Ex. F.  On information and belief, none of these Policies state that Company employees are required to forfeit their right to bring a class action against the Company as a condition of their employment.

On Nov. 4, 2005, CIGNA sent out a company-wide email informing employees that the Employee Handbook ("2005 Handbook") had been updated.  *See* Karp Aff. at ¶¶ 10-11 and Ex. A.  The email, which did not include a copy of the Handbook but directed employees to a website where, they could "access" the Handbook, instructed employees to fill out an electronic "handbook receipt" form ("Electronic Receipt").  *Id.*  The email further warned that the failure to fill out the Electronic Receipt would impact their "employment future." *Id.*

On information and belief, CIGNA did not distribute the 2005 Handbook to any of its employees, including Ms. Karp, but merely provided employees with a "link" to the Handbook on its internal website.  Nonetheless, CIGNA required that, as a necessary term and condition of their employment, employees electronically submit a form acknowledging that they had received the 2005 Handbook.  Def's Ex. G.

The 2005 Handbook described, but did not set out in detail, its "Employee Dispute Resolution Program." *See* Def.'s Mot. Ex. A.  Although the 2005 Handbook explained some basic differences between arbitration and litigation,[3] it did not include, as either an attachment or an enclosure, the Company's Arbitration Rules and Procedures. *Id.*

The description of the arbitration program contained in the 2005 Handbook does not mention that employees are required to waive their class rights.  Def's Mot. Ex. A.  On information and belief, this waiver requirement was not explained to Ms. Karp or other CIGNA employees when they were required to sign the Electronic Receipt in November 2005.  Ms. Karp was provided no opportunity to negotiate or bargain over the terms contained in the 2005 Handbook; on information and belief, neither were any other employees.  Karp. Decl. at ¶ 11.

On November 9, 2005, CIGNA sent Ms. Karp a second email advising her that she was required to sign the 2005 Handbook, directing her to a link where the Handbook had been uploaded and reminding her that the failure to do so would "impact [her] future employment at CIGNA."  11/9/05 email from Marjorie Stein to CIGNA, attached to Karp Aff. as Ex. B. Neither CIGNA's Arbitration Policy nor a link to this Policy was included in the November 9, 2005 email.  The email did not explain that, by signing the 2005 Handbook, Ms. Karp would be waiving her right to bring a class action against the company.

On November 16, 2005, CIGNA sent Ms. Karp a third email, advising her that she was required to sign the 2005 Handbook, directing her to a link where the Handbook had been uploaded and reminding her that the failure to do so would "impact [her] future employment at

---

[3]  The Handbook states, for instance: "The significant differences between going to arbitration and going to court are that the Company's Employment Dispute Arbitration Rules and Procedures will be followed instead of the federal or state rules of court procedure, and there will be no jury, so the process typically will be much faster and less expensive." Def. Mot. Ex. A.

CIGNA." 11/16/05 email from Marjorie Stein to CIGNA, attached to Karp Aff. as Ex. C. Neither CIGNA's Arbitration Policy nor a link to this Policy was included in the November 16, 2005 email. The email did not explain that, by signing the 2005 Handbook, Ms. Karp would be waiving her right to bring a class action against the Company. On information and belief, on November 21, 2005, CIGNA sent Ms. Karp a fourth and final email urging her to "simply review" the Handbook and to sign the "electronic receipt."

In response to the numerous emails she received from CIGNA pressuring her to acknowledge receipt of the 2005 Handbook, on November 22, 2005, Ms. Karp checked the box marked "yes" on the Electronic Receipt, indicating that she had "received or reviewed the updated (November 2005) CIGNA Employee Handbook, which outlines the policies, procedures and programs that are available and applicable to all of the CIGNA companies' employees," acknowledging that she could find more information about CIGNA's "specific policies, procedures and programs" on CIGNA's website, and agreeing that "any dispute between CIGNA and me arising out of or relating to [her] candidacy for employment, employment or termination of employment with CIGNA . . . shall be resolved under CIGNA's Employment Dispute Arbitration Program, which includes mandatory binding arbitration. . . . . ." 11/22/05 Electronic Receipt, Def's Mot. Ex. G. On information and belief, there was no box marked "No" on the Electronic Receipt.

The Electronic Receipt electronically signed by Ms. Karp did not inform her that she was waiving her right to bring a class action against the Company rights. *Id.* Indeed, the form signed by Ms. Karp did not even provide a link to the Company's Arbitration Policy or to the Arbitration Rules and Procedures. Karp Aff. at ¶ 23. Rather, the Electronic Receipt appears only to have advised Ms. Karp and the other CIGNA employees that they could find more

information about CIGNA's policies on the company's intranet website, without any more specific direction.  Def's Mot. Ex. G.  When, on June 3, 2011, Ms. Karp attempted to find a direct link to the Arbitration Policy or the Arbitration Rules and Procedures on CIGNA's intranet site, she was unable to do so.  Karp Aff. at ¶¶ 25-27. On information and belief, the Company's intranet site has gotten easier to navigate since 2005.  *Id.* at ¶ 26.

On information and belief, CIGNA does not normally announce via email policy changes that affect employee rights.  *See id.* at ¶ 27.  When, during the course of Ms. Karp's employment with CIGNA, the Company previously changed its policies, there were multiple conference calls and presentations explaining the changes in policy. *Id.* at ¶ 28.  On information and belief, this did not happen in connection with CIGNA's apparent decision to attempt to deny its employees the right to participate in a class action.  *Id.* at ¶ 28.

To date, CIGNA has never presented Ms. Karp with a copy of its Arbitration Policy or its Arbitration Rules.  *Id.* at ¶ 29.

To date, CIGNA has not provided Ms. Karp with any document indicating that, as a condition of her employment, she was waiving her right to bring or participate in a class action against CIGNA.  *Id.* at ¶ 30.

To date, CIGNA has never advised Ms. Karp that, as a condition of her employment, she was waiving her right to bring a class action against the Company.

## LEGAL STANDARD

### I.   CIGNA MUST DEMONSTRATE AN ABSENCE OF GENUINE ISSUES OF MATERIAL FACT REGARDING THE ALLEGED CONTRACT PROHIBITING CLASS-WIDE ARBITRATION.

The Court should scrutinize CIGNA's motion to compel arbitration, which relies on materials outside the pleadings, using "the same standard of review as [it does for a] motion[] for

summary judgment. "*Boulet v. Bangor Sec. Inc.*, 324 F. Supp. 2d 120, 123 (D. Me. 2004); *see also Cogent Computer Sys., Inc. v. Turbochef Techns., Inc.*, CIV.A. 06-280S, 2008 WL 219343, at *5 (D.R.I. Jan. 24, 2008); *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003).   Thus, CIGNA must demonstrate that, with all reasonable inferences drawn in Ms. Karp's favor, there are no genuine disputes of material fact, and CIGNA is entitled as a matter of law to the relief it seeks. *See Cogent*, 2008 WL 219343, at *5; *Boulet*, 324 F. Supp. 2d at 123-24.

In particular, in order to show that the FAA applies here, CIGNA must demonstrate that the parties formed an enforceable contract to resolve Ms. Karp's Title VII claims using CIGNA's non-class arbitration procedures. *See, e.g.*, *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 547-48 (1st Cir. 2005).

## II.   THIS COURT DECIDES ALL ISSUES OF ARBITRABILITY RELEVANT TO DEFENDANT'S MOTION.

This Court decides all issues of arbitrability relevant to Defendant's Motion, including: whether the parties contracted to waive Ms. Karp's class action rights, whether CIGNA's non-class arbitration Policy prevents Ms. Karp from vindicating her Title VII Pattern and Practice and disparate impact claims, and whether the class waiver provision is severable from CIGNA's arbitration process.   Indeed, the parties agree that the Court should decide the issues of (1) whether the agreement contains a class waiver and (2) whether the class waiver is unconscionable under state law.  *See* Def. Mot. at 11 n.3; *see also Skirchak. v. Res. Dynamics Corp.,* 508 F.3d 49, 56-57 (1st Cir. 2007) (deciding issue of unconscionability of class waiver because both parties agreed that the court should decide the question).

Although *Skirchak* indicates that absent party consent, the question of unconscionability would be for the arbitrator, *id.* at 56, this statement was dicta at the time and has since been overruled by the Supreme Court.  Under *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct.

2847, 2856 (2010), "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*."  Here, Ms. Karp's claims are class claims, and Ms. Karp argues that she never agreed to waive class claims.  Thus, before it may order arbitration on any class claims, the court must "satisfy itself" that the parties *agreed* to arbitrate class claims.  *Id.*  This requires "the court [to] resolve any issue that calls into question *the formation or applicability* of the specific arbitration clause" that Defendant "seeks to have the court enforce."  *Id.* (emphasis added); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) (holding that a "challenge[] specifically [to] the validity of the agreement to arbitrate" is for the court and not the arbitrator).

Under the precedent of this Circuit, the Court must also decide the issue of whether Ms. Karp can vindicate her statutory rights under CIGNA's putative arbitration agreement.  *See Anderson v. Comcast, Corp.*, 500 F.3d 66, 71 (1st Cir. 2007) ("[A]n allegation by a party to an arbitration agreement that some of the terms in an arbitration agreement conflict with a statutory right that is not waivable by contract" is a question of arbitrability for the court.); *see also Kristian v. Comcast Corp.*, 446 F.3d 25, 46 (1st Cir. 2006) (deciding question of arbitrability because it arose from "a clear conflict between the language of the arbitration agreements and the federal antitrust statutes"); *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 196-200 (2d Cir. 2011) ("*Amex II*").

The Court must also decide whether the class waiver is severable.  *See, e.g., Kristian*, 446 F.3d at 62 (deciding severability after finding that arbitration agreement would prevent vindication of statutory rights).

**III.   *AT&T MOBILITY* HAS NO BEARING ON THE FACT THAT THE PARTIES DID NOT FORM AN ENFORCEABLE CONTRACT TO ARBITRATE HER CLAIMS ON A NON-CLASS BASIS AND THAT CIGNA'S ARBITRATION POLICY**

**WAIVER PREVENTS MS. KARP FROM VINDICATING HER STAUTORY RIGHTS.**

CIGNA's motion relies heavily on *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011).  That reliance is misplaced, as the case has no application here.

The Supreme Court in *AT&T Mobility* considered whether the FAA bars states from conditioning enforcement of arbitration agreements on the availability of class-wide arbitration, when class procedures are not necessary to ensure that the arbitrating parties can vindicate their claims. *See* 131 S. Ct. at 1753 (noting that AT&T's arbitration scheme gave customers financial incentives to pursue meritorious claims).  In so doing, the Court held only that state-law rules that target or disproportionately affect arbitration "stand as an obstacle to the accomplishment of the FAA's objectives," and are therefore preempted. *AT&T Mobility,* 131 S. Ct. at 1748-53.

The Court's holding was narrow.  In particular, *AT&T Mobility* explicitly reaffirmed that the FAA's savings clause,[4] "preserves generally applicable contract defenses" under state law. *Id.* at 1748.  This must be so, as it is a "fundamental principle that arbitration is a matter of contract," *Rent–A–Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010), and "courts must place arbitration agreements on an equal footing with other contracts."  *AT&T Mobility*, 131 S. Ct. at 1745 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  *AT&T Mobility* thus has no bearing on Ms. Karp's invocation of the generally applicable contract defense that she never entered into a contract with CIGNA that contained a class waiver in the first place.

*AT&T Mobility* similarly left in place the principle established in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), that an agreement to arbitrate

---

[4] 9 U.S.C. § 2 (providing that arbitration agreements may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract").

statutory claims is valid and enforceable only to the extent that it preserves a party's substantive rights. *See id.* at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (a plaintiff must be allowed to vindicate her rights so that the statute "will continue to serve both its remedial and deterrent function."); *Kristian*, 446 F.3d at 37 ("Unless the arbitral forum provided by a given agreement provides for the fair and adequate enforcement of a party's statutory rights, the arbitral forum . . . loses its claim as a valid alternative to traditional litigation.").

In sum, *AT&T Mobility* proves immaterial to the questions before the Court.

## ARGUMENT

I.   **CIGNA CANNOT FORCE MS. KARP TO ABANDON HER CLASS CLAIMS BECAUSE THE UNDISPUTED FACTS SHOW THAT SHE NEVER RECEIVED NOTICE OF THE WAIVER AND CIGNA'S ELECTRONIC RECEIPT CONTAINED NO CLASS WAIVER.**

Ms. Karp reluctantly assented to the policy requiring her to arbitrate her employment claims. But she did not agree to the non-class arbitration that CIGNA seeks to compel.

State contract law "provides [the] reference point" for determining whether Ms. Karp agreed to the class waiver in CIGNA's arbitration materials. *Skirchak v. Dynamics Res. Corp.*, 508 F.3d 49, 58 (1st Cir. 2007); *see also Rent-A-Ctr.*, 130 S. Ct. at 2776. Here, as in *Skirchak*, Massachusetts law applies. A federal court deciding which state's contract law to apply under the FAA uses the choice-of-law provision of the state in which it presides—in this case, Massachusetts. *See Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007). Under Massachusetts choice-of-law principles, Massachusetts contract law clearly applies: The plaintiff is employed at CIGNA in Massachusetts, the place and performance of the purported

contract occurred in Massachusetts, and the parties have not agreed to use the law of any other state. *See Adelson v. Hananel*, 641 F. Supp. 2d 65, 81 (D. Mass. 2009) (stating that when determining which contract law applies under Massachusetts choice-of-law, the court "is to consider factors including the place of negotiation, the place of contracting, the place of performance, and "the domicil[e], residence, nationality, place of incorporation and place of business of the parties").

In Massachusetts, as in other states, a party alleging a contract must establish an offer, acceptance, and "'a meeting of the minds' on the same proposition on the same terms at the same time." *I&R Mech. Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 455 (2004) (quoting *Restatement (Second) of Contracts* § 17 comment c (1981)). Massachusetts law requires proof that a waiver of statutory rights "was both knowing and voluntary." *Skirchak*, 508 F.3d at 59-60 (citing *Barton v. Brassring, Inc.*, No. 044188, 2006 WL 3492161, at *3 (Mass. Super. Oct. 26, 2006); *Rowe v. Town of N. Reading*, No. 984216, 2001 WL 170655, at *7 (Mass. Super. Jan. 5, 2001)).

Federal law also mandates special scrutiny of the terms before the Court. Where an arbitration agreement allegedly covers Title VII claims, the First Circuit "applie[s] an independent federal scrutiny of the adequacy of the notice of waiver of judicial rights," *Skirchak*, *id.* at 58, because Title VII encourages the use of alternative dispute resolution only "[w]here appropriate and to the extent authorized by law." Civil Rights Act of 1991, Pub. L. No. 102–166, § 118, 105 Stat. 1071, 1081 (1991); *see also Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 20 (1st Cir.1999) (Title VII's "appropriate" provision has "teeth").

CIGNA argues that Ms. Karp agreed to a contract of adhesion when she acknowledged receipt of CIGNA's Employee Handbook. *See* Def's Mot. at 5-6. Ms. Karp does not dispute

that, by clicking "yes" (the only option provided) on CIGNA's electronic receipt, she agreed that the Company's Policy required her to submit her claims to "CIGNA's Employment Dispute Arbitration Program."  Def.'s Mot. Ex. G.

CIGNA goes on to claim, however, that the Electronic Receipt "require[s] [Ms. Karp] to arbitrate her claims individually, and not on a class basis."   Def's Mot. at 6.  *That* is wrong as a matter of law.  CIGNA presents no evidence of an offer, acceptance, or knowing and voluntary meeting of the minds sufficient to bring the class waiver within the scope of the contract.

CIGNA proffers no evidence that Ms. Karp had ever seen or heard of the class waiver when she executed the Electronic Receipt,  much less that there was a meeting of the minds as to the class waiver. The Electronic Receipt itself did not advise recipients that "mandatory binding arbitration" could not include class arbitration.  Def.'s Mot. Ex. G.  Nor did the Employee Handbook, which merely described the basic differences between litigation and arbitration. Def.'s Mot. Ex. A.  CIGNA does not allege that it ever sent Ms. Karp a copy of its current Arbitration Policy or the Rules and Procedures containing the class waiver.  Karp Aff. at ¶ 29 ("To my knowledge, I have never received a copy of Cigna's Arbitration Policy or the Arbitration Rules and Procedures that contained a class action waiver.").  Ms. Karp did see an earlier version of the Arbitration Policy—but that version did not contain the class waiver.  *See* Def's Mot. at 2 & Ex. E.

CIGNA therefore cannot carry its burden to demonstrate that the parties formed a contract that included the class waiver.  *See Kennedy v. JP Morgan Chase Nat. Corp.*, 10-CV-11324-RGS, 2011 WL 1576569, at *3 (D. Mass. Apr. 26, 2011) (finding no meeting of the minds where one party had changed the terms of the contract without the other party's knowledge); *Vieira v. First Am. Title Ins. Co.,* 668 F. Supp. 2d 282, 290 (D. Mass. 2009)

14

(finding that there was no meeting of the minds on a material terms of a title insurance contract where only one party understood the terms of a manual setting rates to be part of the contract); *NaviSite, Inc. v. Cloonan,* CIV.A. 02-1949, 2005 WL 1528903, at *7-8 (Mass. Super. May 11, 2005) (finding no meeting of the minds in a severance agreement where one party had secretly changed the terms).

Alternatively, as in *Skirchak*, enforcement of the class waiver in the absence of a clear and express meeting of the minds would be unconscionable. *See* 508 F.3d at 58-61. Massachusetts courts applying the unconscionability doctrine will consider an onerous contract provision's "setting, purpose, and effect" and give "particular attention to whether [it] could result in unfair surprise and was oppressive to the disadvantaged party." *Miller v. Cotter*, 863 N.E.2d 537, 545 (Mass. 2007); *see Skirchak*, 508 F.3d at 59 (same).  CIGNA implies that the Employment Handbook notified Ms. Karp and other employees of the class waiver by "direct[ing] them" to CIGNA's intranet to find the Arbitration Policy and the Rules and Procedures.  Def.'s Mot. at 3 (citing Stein Decl. ¶ 10, Ex. A at 25-26).  Withholding information, while suggesting that employees might engage in such labyrynthine research concerning their rights in arbitration, is not fair notice of a material contract term, and constitutes exactly the sort of unfair surprise.  Consequently, unconscionability provides an alternative basis to exclude the class waiver from the scope of the Electronic Receipt "contract."  *See Skirchak,* 508 F.3d at 60-61 (finding class waiver buried in an appendix attached to email unconscionable due to lack of "fair notice"); *NaviSite, Inc. v. Cloonan*, CIV.A. 02-1949, 2005 WL 1528903, at *9 (Mass. Super. May 11, 2005) (finding contract unconscionable when one party had secretly changed contract terms during drafting process).

## II. THE FAA DOES NOT MANDATE ENFORCEMENT OF CIGNA'S CLASS ACTION WAIVER BECAUSE IT WOULD PREVENT MS. KARP FROM VINDICATING HER TITLE VII RIGHTS.

The Supreme Court has made clear that statutory rights such as those provided by Title VII may be subject to mandatory arbitration only if the arbitral forum allows the plaintiff to "effectively vindicate" her rights so that the statute "will continue to serve both its remedial and deterrent function." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").[5]

This and other Circuits have repeatedly refused to enforce arbitration agreements that contain class action bans which prevent a party from vindicating her statutory rights. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 37 (1st Cir. 2006) ("Unless the arbitral forum provided by a given agreement provides for the fair and adequate enforcement of a party's statutory rights, [it] runs afoul of [the presumption of arbitrability] and loses its claim as a valid alternative to traditional litigation." (quoting *Mitsubishi*, 473 U.S. at 637; *Rosenberg,* 170 F.3d at 14)); *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 197 (2d Cir. 2011) ("*Amex II*") (striking waiver provision where high costs of litigation combined with class waiver would prevent plaintiffs from vindicating statutory rights); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 670 (6th Cir. 2003) (en banc); *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007) (reversing order compelling arbitration where class action waiver effectively prevented consumers from vindicating their rights) (citing Kristian); *Gadson v. SuperShuttle Int'l*, 10-CV-01057-AW, 2011

---

[5] Although the Supreme Court has never explicitly decided (and Plaintiff does not concede) that Title VII claims are subject to arbitration. *See Gilmer v. interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (ADEA), this Opposition provides alternative bases on which to deny Defendant's motion.

WL 1231311, at *5-9 (D. Md. Mar. 30, 2011) (denying motion to compel arbitration where class action waiver prevented plaintiffs from vindicating statutory rights).

Similarly, numerous courts have invalidated agreements that impede a plaintiff's ability to prosecute her claims. *See, e.g., Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir.1999) (invalidating arbitration agreement which required employee to unilaterally disclose claims and lists of witnesses and allowed employer to choose arbitration panel and exercise unbridled discretion in changing rules); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 268-70 (3d Cir. 2003) (refusing to compel arbitration where, *inter alia*, restrictions on remedies were "one-sided and unreasonable"); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125-126 (2d Cir. 2010) (questioning whether an arbitration clause that shortened the limitations period and included a cost and fee-shifting provision might "significantly diminish a litigant's [statutory] rights" and therefore be invalid); *see also Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005) (Roberts, J.) (allowing arbitration to proceed only after severing a ban on punitive damages in employment discrimination claims); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 & n.14 (5th Cir. 2003) (similar).

The class action waiver contained in CIGNA's arbitration policy forecloses Ms. Karp from vindicating her Title VII rights because it prevents her from bringing or proving her pattern or practice and disparate impact claims and deprives her of the ability to obtain injunctive relief to remedy such violations. For this reason, and because the provisions cannot be severed under this Court's holding in *Kristian*, *see* Section IV, CIGNA's arbitration policy is unenforceable.

A.    **ENFORCEMENT OF CIGNA'S CLASS ACTION WAIVER WILL DENY MS. KARP'S ABILITY TO PROSECUTE HER CLAIMS.**[6]

1.    **Enforcement of CIGNA's Class Action Waiver Will Prevent Ms. Karp From Bringing a Pattern or Practice claim.**

Enforcement of CIGNA's class action waiver would foreclose Ms. Karp from vindicating her statutory rights because it would prevent her from bringing her pattern or practice claim and disparate impact claims.  Title VII affords three different claims to victims of discrimination.[7] First, an individual may use the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to show that an employer intentionally discriminated against her ("*McDonnell Douglas* claim").  Second, an individual may show that an employer's policies or practices, though not intentionally discriminatory, had a disparate impact on the class ("disparate impact claim").  *See* 42 U.S.C. § 2000e-2(k); *see also Griggs v. Duke Power Co.*, 401 U.S. 424,

---

[6] Plaintiff does not address in this filing the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, ___ S. Ct. ___, No. 10-277, 2011 U.S. LEXIS 4567 (June 20, 2011) for two reasons.  First, the case is not relevant to the pending motion, as it reaffirms both (1) that private pattern or practice cases are viable under Title VII, *id.* at *23-24, and (2) that plaintiffs can state pattern or practice or disparate impact claims on the basis of the subjective decisions of an employer's managers, *id.* at *29-30.  Second, counsel for plaintiff was in the process of amending the Complaint to add additional Named Plaintiffs and, to the extent that Plaintiff may have named the wrong CIGNA entity, to correct this technical error.  *See* Affidavit of David Sanford at ¶ 13.  Upon denial of Defendant's motion, Plaintiff's counsel will include with those amendments clarification of those pattern or practice and disparate impact claims that are *not* premised on subjective judgments, (and are thus unaffected by *Dukes*), and/or to conform any claims based on subjective judgments to the holding in *Dukes*.  Should the Court believe that *Dukes* is somehow relevant to the pending motion, Plaintiff requests the opportunity to amend the Complaint prior to a ruling by the Court.

[7] Although the First Circuit has stated in dicta that "[a] pattern and practice claim is not a freestanding cause of action but merely a method of proving an underlying legal violation." *Aguilar v. U.S. Immigration & Customs Enforcement Div. of Dep't. of of Homeland Sec.*, 510 F.3d 1, 16 (1st Cir. 2007), that conclusion is dubious given the Supreme Court's holding in *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 880 (1984), that an individual party to an unsuccessful pattern or practice claim is precluded in subsequent litigation *only* from bringing another pattern or practice claim or from contesting the issue of a discriminatory pattern, but *not* from bringing an individual, *McDonnell-Douglas* claim. Its status as a freestanding cause of action or a method of proof is not relevant for the current case. This brief will refer to the pattern and practice "claim."

431 (1971) (holding that facially neutral practices having discriminatory effect violate Title VII). Third, a plaintiff may demonstrate that an employer engaged in a pattern or practice of intentional discrimination ("pattern or practice" or "*Teamsters* Claim"). *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).

Although both *Teamsters* and *McDonnell Douglas* claims allege intentional discrimination, they rely on different evidence and impose different burdens of proof on plaintiffs. These differences greatly affect a Title VII plaintiff's ability to prosecute her claims, especially where the particular violation alleged relies on aggregate proof. *See, e.g., Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001) ("[T]he order and allocation of proof, as well as the overall nature of the trial proceedings, in a pattern or practice case differ dramatically from a case involving only individual claims of discrimination.").

A *Teamsters* claim has two stages. In the first stage, the class presents aggregate proof demonstrating that the employer engaged in a pattern or practice of discrimination against its employees. *See Teamsters*, 431 U.S. at 360. Once the plaintiff demonstrates a pattern and practice of discrimination decision, she is entitled to a presumption that the employer engaged in discrimination. The *defendant* must rebut this presumption *as to each individual* in order to avoid liability. *Id.*

Under the *McDonnell Douglas* framework, by contrast, the individual plaintiff may not rely on aggregate proof to prove that she was subject to discrimination. Rather, she must demonstrate through individual proof that she was the victim of discrimination. *See, e.g., Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760-61 (4th Cir. 1998), *vacated on other grds.*, 527 U.S. 1031 (1999). There is thus a "'manifest' difference between individual claims of

discrimination and a class action alleging a general pattern or practice." *King v. Gen. Elec. Co.*, 960 F.2d 617, 622 (7th Cir. 1992) (quoting *Cooper*, 467 U.S. at 876).

Without the ability to bring her pattern or practice and disparate impact claims, Ms. Karp will be denied the ability to establish liability on those bases. First, under the *Teamsters* framework, the plaintiff is subject to a substantially lower burden of proof. *See, e.g.*, *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 159 (2d. Cir. 2001) ("The effect of the presumption from the liability stage [in a pattern or practice case] is to *substantially lessen each class member's evidentiary burden* relative to that which would be required if the employee were proceeding separately with an individual disparate treatment claim under the *McDonnell Douglas* framework.") (emphasis added); *Thiessen*, *supra,* 267 F.3d at 1106. Without a pattern or practice claim, Ms. Karp will thus be far less likely to succeed in proving her discriminatory treatment claims. *See, e.g.* Lieder Aff. at ¶ 12 (The right to bring a pattern-or-practice claim "is extremely important" because it "increases the odds of any individual prevailing on her claim."); *see also* Kevin M. Clermont & Stewart J. Schwab, *How Employment Discrimination Plaintiffs Fare in Federal Court*, 1 J. EMPIRICAL LEGAL STUD. 429 (2004), attached hereto as Ex. A. (comprehensive survey revealing that fewer than 10% of individuals whose employment discrimination claims went to judgment prevailed on their claims.").[8]

The pattern or practice method of proof also evens out the scales of justice by allowing the plaintiff to rely on broader-scale evidence such as statistics, policy evidence and anecdotes

---

[8] For similar reasons, Plaintiff would also be unlikely to succeed on a disparate impact claim if she is forced to proceed individually. While plaintiffs may bring individual disparate impact claims, since such claims rely on similar statistical evidence, these claims are often just as costly to prosecute. *See Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d at 161 (2d Cir. 2001) (noting similarity between proof in disparate impact and pattern and practice cases); *see also* Lieder Aff. at. ¶¶ 8, 16, 30, 31.

from other class members.  Unlike the individual plaintiff, the pattern or practice Plaintiff is not limited to pitting his or her individual story against management's, making it easier for the proverbial "David" to fight "Goliath."  *See* Lieder Aff. at ¶ 12 ("In an individual action, a plaintiff is unable to put his or her story into the context of a broad pattern of decisions.  Thus, it becomes the individual's story against the manager's story, and management generally can enunciate non-discriminatory reasons for personnel decisions.").

Finally, without the ability to bring a Pattern or Practice Claim, Ms. Karp will be denied access to evidence necessary to prosecute her claims.  *See* Lieder Aff. at ¶ 4. (Without pattern or practice evidence, it "would make it impossible to acquire the information necessary to litigate "pattern or practice" claims. . . ."); *id.* at ¶ 15 (noting that the instant arbitration agreement limits scope of discovery to individual disputes).

Here, the litigation is complicated and fact-dependent.   For example, Ms. Karp alleges that Defendant followed a discriminatory pattern and practice of paying women less than men. To prove this claim, she will have to use aggregate data to show a statistically significant pay disparity.  *See, e.g., Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 309-10 & n.14 (1977) (discussing two- or three-standard deviation threshold of statistical proof for a pattern or practice employment case).  Proving her discriminatory pay claim requires information that Ms. Karp does not have:  Company-wide pay figures.   *See* Lieder Aff. at ¶ 12 ("By using statistics, policy evidence and anecdotes, a plaintiff who is part of a pattern-or-practice suit is not limited to pitting his or her individual story against management's.").  She will also have to supplement statistics with anecdotes from individual class members.  *Teamsters*, 431 U.S. at 338.  Similar statistical data and analysis would be required to prove Ms. Karp's claims of discriminatory promotion and evaluation practices.  Enforcement of CIGNA's class action waiver would thus

prevent Ms. Karp from taking advantage of either the burden of proof or the types of discovery inherent in pattern and practice claims. As such it would preclude her from vindicating her Title VII claims.

### a. Many Courts Disallow Pattern-or-Practice Evidence in Individual Cases.

Although the First Circuit has been silent on the matter, many courts have held that pattern or practice claims may only be brought on a class basis. *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 967-69 & n.30 (11th Cir. 2008); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355-56 & n.4 (5th Cir. 2001) (recognizing that "the pattern and practice method of proof is almost exclusively used in class actions."); *Lowery*, 158 F.3d at 760-61; *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866–67 n. 6 (7th Cir. 1985); *Houston v. Manthein*, No. 09 CIV. 4544, 2010 WL 6121688, at *6 (S.D.N.Y. July 7, 2010); *United States v. City of N.Y.,* 631 F.Supp.2d 419, 427 (S.D.N.Y. 2009). Enforcement of CIGNA's class action waiver provision against Ms. Karp thus threatens her ability to bring a Pattern or Practice Claim.

### b. The Discovery Provisions Contained in CIGNA's Arbitration Policy Preclude Ms. Karp From Obtaining the Information Necessary to Litigate "Pattern or Practice" and Disparate Impact Claims.

Even if she attempted to pursue them on a non-class basis, the discovery limitations set forth in CIGNA's Arbitration Policy prevent Ms. Karp from litigating her pattern or practice and disparate impact claims. *See* Lieder Aff. at ¶ 4 ("The arbitration provision would effectively act as a bar to a "pattern-or-practice" lawsuit because the discovery provisions would make it impossible to acquire the information necessary to litigate pattern-or-practice claims.").

Litigation of a pattern or practice claim requires that a plaintiff engage in substantial discovery, much of which is precluded by CIGNA's Arbitration Policy. *See* Lieder Aff. at ¶ 16

("The discovery required in a pattern-or-practice case far exceeds the discovery allowed under the Rules and Procedures in numerous ways. . . ."). First, the plaintiffs must discover company-wide data sufficient for an expert to conduct a statistical analysis to determine whether the employment decisions challenged by the plaintiff are consistent with neutral decision-making or discrimination. *Id*; *see also* Affidavit and Report of Alex Vekker ("Vekker Aff.") at ¶ 3. This often necessitates *months* of discovery and negotiations between the parties regarding the scope and production of a company's records and databases. *See id.* Indeed, discovery in pattern or practice cases typically takes at least a year. *See id.* at ¶ 26. Yet, CIGNA's Arbitration Policy requires that all discovery shall occur within a *25-day period. See* Def's Mot. Ex. C at ¶¶ 13-14.

Ms. Karp would also have to obtain documentary information concerning Company policies and/or practices. *See* Lieder Aff. at ¶ 18; Vekker Aff. at ¶ 3. She also must obtain discovery concerning how individual managers implement company policies or practices. *Id.* at ¶ 19. These types of documents, which sometimes amount to hundreds of thousands of pages, are key to a pattern or practice claim in that they "often undercut the company's official anti-discrimination policy." *Id.* Indeed, "[w]ithout them, neither the Plaintiff nor any other employee could bring a pattern-or-practice claim in arbitration." *Id.* at ¶ 20. Yet, CIGNA's Arbitration Policy provides that, unless each party produces copies of any documents it intends to use at the hearing, *there will be no document production.* Def's Mot. Ex. C at ¶ 11. Given that it is silent on the issue, the Policy apparently precludes a party from propounding either interrogatories or Requests to Admit. *Id.*

Further, CIGNA's Arbitration Policy allows for a total of *three days* of depositions of witnesses – and only of those "with direct knowledge of the facts surrounding the dispute. Def's Mot. Ex. C at ¶ 11. A party "may not depose any employee of any CIGNA company who

certifies in writing to the arbitrator that he/she has no direct knowledge of the facts surrounding the dispute." *See* Def's Mot. Ex. C at Para 11.  Yet, as Michael Lieder points out, "[t]hree days of deposition simply would not be sufficient for Plaintiff or another employee to be in a position to prove the existence of a pattern-or-practice of discrimination." Lieder Aff. at ¶ 24.  Indeed, in every pattern or practice case in which he has been involved the plaintiffs have conducted at least 25 days of depositions. *Id.* at ¶ 23.

Finally, CIGNA's Policy makes *no provision for the use of expert witnesses. See* Def's Mot. Ex. C at ¶ 11.  On this basis alone, Ms. Karp is effectively precluded from prosecuting her pattern and practice claims.  *See* Lieder Aff. at ¶ 19 ("Without experts, Plaintiff or any of CIGNA's other employees cannot hope to prove a pattern-or-practice of discrimination.").

### c. The Class Ban Make the Costs of Litigating Impossible for Ms. Karp to Prosecute Her Claims.

Even if Plaintiff were permitted to bring pattern or practice and disparate impact claims individually and the discovery limits were somehow ignored, the class waiver would prevent Ms. Karp from pursuing those claims because no rational attorney would agree to accept her case and she could not afford to bring it herself.  *See* Lieder Aff. at ¶ 30 ("Regardless of the outcome of this legal analysis, the prohibition of even consolidation of claims means to a certainty that no pattern-or-practice claims may be brought.").

It is well established that an important purpose of class actions is to allow individuals to band together to vindicate their rights where each individual's costs would otherwise prevent him from doing so.  *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 41-42 (1st Cir. 2003). Indeed both the Supreme Court and the First Circuit have repeatedly recognized that high arbitration costs or inequitable cost shifting prevents individuals from vindicating their statutory rights.  *Randolph*, 531 U.S. at 90; *Kristian*, 446 F.3d at 53-55.  Here, the high costs of litigating

on an individual basis would prevent Plaintiff from vindicating her statutory rights, as she would be unable to afford to litigate her claims.

Even if she were allowed to rely on pattern or practice evidence, the costs of litigating on an individual basis would preclude Ms. Karp from effectively prosecuting her claims.   In a pattern or practice case, the plaintiff must rely on company-wide statistical evidence.   This requires the hiring of various experts, including, at a minimum, an experts to collect and analyze the data.  *See* Lieder Aff. at ¶ 21.

The cost of retaining statistical experts to collect and analyze company data in this case is likely to be between $100,000.00 and $400,000.00.   Lieder Aff. at ¶ 31; Vekker Aff. at ¶ 4. Along with other experts, the total expert expense could exceed $1,000,000.00. *See* Lieder Aff. at ¶ 31.

Ms. Karp would also have to spend substantial dollars to propound and respond to discovery, take depositions, obtain deposition transcripts, and copy and print potentially tens or hundreds of thousands of pages of documents.  *See id.* at ¶¶ 23, 31.   In the absence of class litigation, Ms. Karp will be forced to shoulder all of these costs, effectively precluding Ms. Karp from prosecuting her claims.  *See* Karp Aff. at 31.  *See also Kristian*, 446 F.3d at 54 ("The realistic alternative to a class action is not 17,000,000 individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.00. . . .") (internal quotations omitted); Lieder Aff. at ¶ 33 ("No employee could afford to pay the millions of dollars of expenses and attorneys' fees associated with a pattern-or-practice case as those expenses and attorneys' fees are incurred in the hope of ultimate recovery.").

Nor would any reasonable attorney be willing to front the costs of and invest the substantial attorneys' hours in Ms. Karp's pattern and practice and disparate impact claims on an

individual basis.  *See* Lieder Aff. at ¶ 33 ("I am not aware of any firm that regularly litigates pattern-or-practice cases that expects clients to cover all anticipated out-of-pocket expenses, let alone to pay attorneys' fees."); *id.* at  34 ("Neither S&L nor any prudent plaintiffs' lawyer would ever agree to take on a pattern-or-practice case for an individual employee, even if there were no restrictions on discovery and if individual pattern-or-practice cases were permitted."); Lieder Aff. at 34.

Although Title VII provides for the recovery of fees by the prevailing plaintiff, attorneys' fees and expenses associated with the pattern and practice and disparate impact claims in this case would almost certainly be greater than Ms. Karp's individual recovery.  *See* Lieder Aff. at ¶ 32 ("During the decade or more in which [he] was evaluating whether S&L should offer representation in potential cases, S&L had the guideline that [it] would, except in unusual circumstances, not even consider a pattern-or-practice case unless [it] projected *at least five million dollars in damages* for the potential class.").  Ms. Karp's attorneys, Sanford Wittels & Heisler, LLP ("SWH"), would not, therefore, have taken this case on an individual basis.  *See* Sanford Aff. at ¶ 18.  Moreover, no rational attorney would agree to do so.  Lieder Aff. at ¶ 34.

Given the prohibitive costs inherent in conducting this discovery and engaging experts to conducting these statistical analyses versus their likely recovery in this case, it is clear that, without the opportunity to proceed as a class, both Ms. Karp and the individual members would be prevented from vindicating their statutory rights.   Indeed, the facts of this case are virtually identical to those at issue in *Kristian* and *Amex II,* wherein the First and Second Circuits found a class action to be necessary for the vindication of the plaintiff's federal statutory rights. [9]

---

[9] In its Motion for Judicial Notice and attached Declarations, CIGNA points to 57 individual employment matters in which individual plaintiffs secured damages that average $848,243.00.  First, this information has no bearing on the inability of Ms. Karp to bring her pattern and practice and disparate impact claims under CIGNA's arbitration policy.  Indeed, although very little information is provided, it appears that these involve

d.      **CIGNA's Arbitration Policy Would Deny Ms. Karp the Ability
        Vindicate Her Statutory Rights By Prohibiting the Relief
        Necessary to Cure a Title VII Violation.**

In enacting Title VII, Congress made sure that broad injunctive relief was available to the

Title VII Plaintiff:

> If the court finds that the respondent has intentionally engaged in or is intentionally
> engaging in an unlawful employment…, the court may enjoin the respondent from
> engaging in such unlawful employment practice, and order such affirmative action as
> may be appropriate, which may include, but is not limited to, reinstatement or hiring of
> employees, with or without back pay…or any other equitable relief as the court deems
> appropriate.

42 U.S.C. § 2000e–5(g)(1); *see also id*. at § 2000e-6(a) (government may seek "such relief,

including an application for a permanent or temporary injunction, restraining order or other order

against the person or persons responsible for such pattern or practice, as [it] deems necessary to

insure the full enjoyment of the rights herein described").

On the basis of this and other language in Title VII, the Supreme Court has held that

"[w]here racial discrimination is concerned, 'the (district) court has not merely the power but the

duty to render a decree which will so far as possible eliminate the discriminatory effects of the

past as well as bar like discrimination in the future.'" *Albemarle Paper Co. v. Moody*, 422 U.S.

---

individual claims only.  Even after recovery on individual claims, the 57 "representative" cases cited by
Defendant include only those cases wherein defense counsel "was able to determine the verdict award[ed] to
the Plaintiff. . ." Decl. of Sarah Green, Esq. at Para 7.  It is not, therefore, "representative."  Further, it does not
include any cases with verdicts for the defendant or where the plaintiff received no award.

It also does not indicate if the awards are based on other common law claims (such as, e.g., intentional
infliction of emotional distress) that are not plead by Ms. Karp and which are not subject to Title VII's
$300,000.00 cap.  Moreover, the "average" award cited by CIGNA is largely skewed by verdicts awarded in a
few outlier cases that exceeded $2,000,000.00.  Finally, Defendant's Notice does not account for disposition
on appeal.

In short: the "average" verdict cited by Defendant has no bearing on the simple fact that Ms. Karp
would not be able to afford the hundreds of thousands of dollars necessary to litigate her claims on her own,
and that no reasonable attorney would have taken on her case on an individual basis.  See Lieder Decl. at Para.
31 ("During the decade or more in which [he] was evaluating whether S&L should offer representation in
potential cases, S&L had the guideline that [it] would, except in unusual circumstances, not even consider a
pattern-or-practice case unless [it] projected at least five million dollars in damages for the potential class.").

405, 418 (1975) (quoting *Louisiana v. United States*, 380 U.S. 145, 154 (1965)); *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364 (1977) ("the purpose of Congress in vesting broad equitable powers in Title VII courts was 'to make possible the 'fashion[ing] [of] the most complete relief possible'"; district courts have "'not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future'") (quoting *Albemarle*, 422 U.S. at 421); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72 (2006) ("[T]hroughout its history, Title VII has provided for injunctions to bar like discrimination in the future….") (internal quotation marks omitted); *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 70 (1982) (noting in a consolidated class action and EEOC action that "[a]n adequate remedy for adopting a discriminatory seniority system would very likely include an injunction against the future application of the system"); *EEOC v. Shell Oil Co.,* 466 U.S. 54, 69 (1984) ("Congress was aware that employment discrimination was a 'complex and pervasive' problem that could be extirpated only with thoroughgoing remedies.").

In contravention of Title VII, CIGNA's Arbitration Policy expressly limits Plaintiff's right to systematic injunctive relief. The Policy provides:

> The arbitrator will have the power to award all equitable and legal remedies that would be available in a court of law under applicable law. The arbitrator will have *no power* to change the Companies' policies and procedures (including this one).

*See* Def's Mot. Ex. C at ¶ 11 (emphasis added).

Because it prohibits Ms. Karp from obtaining the relief available to her under Title VII, CIGNA's Arbitration Policy cannot be enforced against her. *See Kristian*, 446 F.3d at 37 (ban on the recovery of attorney's fees and costs in arbitration agreements would "prevent[] Plaintiffs from vindicating their statutory rights in arbitration") (citing *Mitsubishi*, 473 U.S. at 637;

*Rosenberg*, 170 F.3d at 14); *see also* Lieder Aff. at ¶ 36 ("Changing an employer's policies and procedures to lessen the opportunity for discrimination is one of the primary purposes of pattern-or-practice cases and the opportunity to effect a change is a right of any person under the law."); *see also* Section II, *infra*, at 16-17.

In addition to the specific limits on relief, under CIGNA's Policy, Ms. Karp would be unable to obtain effective systematic relief without a class proceeding for two additional reasons. First, the rules of equity limit a court's discretion to grant broad relief in an individual proceeding. Second, without representation of the interests of the class as a whole, an arbitrator would be unable to address the concerns of those affected by a broad-ranging injunction.

Many courts have held that only a class, and not an individual, may pursue wide-ranging injunctions against discriminatory practices. For example, several courts have held that because injunctions should be no broader than necessary, an individual plaintiff is not entitled to a wide-ranging injunction where that would be effectively class relief. *See generally Lowery*, 158 F.3d at 766-67 (district court abused its discretion by granting what amounted to class-wide relief to individual plaintiff). Furthermore, many courts have held that individuals cannot pursue pattern or practice disparate treatment cases under Title VII; a class is required.

As discussed above in Section II.A, pattern or practice claims permit plaintiffs to expose and correct widespread workplace discrimination. *See* Lieder Aff. at ¶ 37 ("Successful pattern-or-practice and disparate impact cases typically result in significant changes to defendants' HR policies and procedures."). Without the ability to bring a class action, Ms. Karp will be unable to secure this type of systematic relief, thus depriving her of her Title VII rights.

Second, it is impossible for a judge or an arbitrator to craft *effective* injunctive relief without having before it the interests of all the relevant parties. The provisions and working of

Rule 23 are designed to protect the interests of all those affected in a class action.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)  Accordingly, class action proceedings are necessary to the formulation of injunctive relief.

Thus, contrary to Defendant's suggestion, enforcement of CIGNA's mandatory class action waiver will prevent Ms. Karp from availing herself of the relief contemplated by the Civil Rights Act.  *See*  Lieder Aff. at ¶ 39 ("the Arbitration Policy, through the limitations on discovery, the prohibition of class and consolidated actions, and the limitations on the relief that an arbitrator can award, does take away important substantive rights – the right to bring and obtain relief for pattern-or-practice or company-wide or other broad disparate impact claims, rights that Congress expressly included in Title VII.").  Because there exists an inherent conflict between the intent and purpose of Title VII to allow for systematic relief, CIGNA's class action waiver cannot be enforced.

Nor could Ms. Karp rely on a public agency to adequately address the systemic discrimination that exists in the CIGNA workplace.  Most of the public agencies invested with the authority to investigate and prosecute Title VII claims lack the resources to pursue more than a small number of cases that are brought before them.  The Equal Employment Opportunity Commission has long lacked the staffing and resources to handle more than a small fraction of discrimination cases it receives at a time.  *See, e.g.*, *EEOC v. Waffle House*, 534 U.S. 279, 290 n.7 (2002) (noting that the EEOC has never been able to file suit to redress more than a "small fraction" of even the charges it determines have merit).  Private class actions such as this one therefore provide perhaps the only means of ensuring that CIGNA complies with Title VII.  *See EEOC v. Assoc. Dry Goods Corp.*, 449 U.S. 590 595 (1981) (private lawsuits by aggrieved employees" have always been "an important part of [Title VII's] means of enforcement.").

**III.   BECAUSE THE INVALID CLASS WAIVER IS NOT SEVERABLE FROM CIGNA'S ARBITRATION SCHEME AS A WHOLE, THE COURT SHOULD RETAIN MS. KARP'S CASE RATHER THAN REFORMING THE ARBITRATION RULES TO ALLOW CLASS CLAIMS.**

As the First Circuit observed in *Kristian*, once a court holds that it cannot enforce a provision precluding a plaintiff from bringing class claims in arbitration, the preferred course is to refuse to order arbitration at all, "rather than using severance as a remedy" for the offending limitation. 446 F.3d at 62.  "Since the premise of arbitration is the contractual agreement of the parties to an arbitral forum, drastic rewriting [of the arbitration rules] is particularly inappropriate." *Id.* (citing *MCI Telecomms. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 428-29 (1st Cir. 1998)); *see Fiser v. Dell Computer Corp.*, 188 P.3d 1215, 1222 (N.M. 2008) ("Here, the class action ban is part of the arbitration provision and is central to the mechanism for resolving the dispute between the parties; therefore, it cannot be severed. We decline to enforce the arbitration provision."); *see also Paladino v. Avnet Computer Techns. Inc.*, 134 F.3d 1054, 1058 (11th Cir. 1998) (noting that severing damages limitation from arbitration agreement would be "problematic" because the term "taint[ed]" the whole agreement).

In the end, the *Kristian* court severed the class waiver at issue there—but only because it found "an unmistakable expression," in the form of a savings clause referring *directly* to the stricken term, "that that the class arbitration bar is not an indispensable condition of the arbitral forum." 446 F.3d at 61. "In the absence of a savings clause specifically affixed to the class arbitration bar," the court explained in considered dictum, "severing that bar would be difficult to justify." *Id.* at 62.

*Kristian* supports denying arbitration in this case, rather than severing the class action waiver. CIGNA's Arbitration Policy contains a general savings clause authorizing a court to "rewrite or reform the Policy such that the parties' agreement to arbitrate disputes under this

Policy may be enforced," Def.'s Mot. Ex. B at 2; but the Policy's class bar has no savings clause of its own.   Nor is there any other "unmistakable expression" elsewhere in the contract documents that the bar on class claims is not dispensable, or that it is not fundamental to CIGNA's arbitration scheme.  *Kristian*, 446 F.3d at 61. This Court should therefore decline to sever the class bar, and should hold that Ms. Karp never entered into an enforceable agreement to submit her claims to CIGNA's arbitration regime.

In the event the Court rules, notwithstanding *Kristian*, that it may sever the class waiver from the arbitration scheme that CIGNA seeks to invoke, the Court should still deny CIGNA's motion in part, and order the company to allow Ms. Karp to pursue class arbitration. *See, e.g*., *Anderson v. Comcast, Corp*., 500 F.3d 66, 77 (1st Cir. 2007) (severing one-year limitations period from arbitration clause and ordering arbitrators to apply four-year statute of limitations); *Caban v. J.P. Morgan Chase & Co*., 606 F. Supp. 2d 1361, 1372 (S.D. Fla. 2009) (severing class action waiver and ordering class arbitration).

## IV.     DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT YET HAD THE OPPORTUNITY TO CONDUCT ANY DISCOVERY.

On the record as it currently stands, the Court should deny CIGNA's motion because (a) there is no enforceable contract by which Ms. Karp waived her class action rights and (b) enforcement of the class action waiver would prevent Ms. Karp from vindicating her Title VII rights.   In support of its Motion to Dismiss, CIGNA relies on numerous documents outside the pleadings.   Accordingly, where facts are necessary to resolve a motion for summary judgment, the Court may (1) deny summary judgment, (2) allow opportunity for additional discovery and/or (3) issue any other order it deems appropriate. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain

affidavits or declarations or to take discovery; or (3) issue any other appropriate order.");[10] *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (non-moving party must be provided the opportunity to conduct discovery to enable it to respond); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986).

Here, should the Court determine that the existing record is not adequate, it should allow Plaintiff discovery. There are numerous facts that may be relevant to Defendant's motion that Ms. Karp does not have in her possession. To the extent that the Court believes that additional facts are necessary to determine whether CIGNA's Arbitration Policy is an enforceable "contract," Plaintiff should have the opportunity to conduct discovery as to, *inter alia*: (1) when the waiver provision was drafted into the Arbitration Policy; (2) the extent to which the class action waiver contained in the Policy was superseded or contradicted by other documents; (3) when and how Ms. Karp was provided a copy of the Company's updated Arbitration Policy and (4) if, how and when was advised of the Company's class action waiver.

To the extent that the Court finds that the Court believes that additional facts are necessary to determine whether Ms. Karp' can vindicate her statutory rights, it should permit discovery on, *inter alia*, (1) what CIGNA has argued about the Policy's limited discovery

---

[10] Because Defendant's motion is filed under Rule 12(b)(1), not 12(b)(2) or 12(b)(6), it is not technically converted to a Rule 56 motion for summary judgment if the Court considers material outside the pleadings. However, courts routinely grant discovery even for motions made under Rule 12(b)(1) when additional facts are necessary. *See, e.g., Cunningham v. Van Ru Credit Corp.*, No. 06-10452, 2006 WL 2056576 (E.D. Mich. July 21, 2006) (granting motion for discovery under former Rule 56(f) in response to arbitration); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727 (11th Cir.1982) (reversing decision granting Rule 12(b)(1) motion and remanding for further discovery); *DDB Techs., L.L.C. v. MLB Advanced Media, LP,* 517 F.3d 1284 (Fed. Cir. 2008) (reversing dismissal for lack of subject matter jurisdiction and remanding for further discovery). Regardless of which provision of the Rules is proper, Plaintiff needs additional facts, and the Court should grant discovery.

provision; (2) what the Company has argued about the Policy's restriction on injunctive relief; (3) the extent to which arbitrators have been permitted to allow discovery beyond that provided in the Policy in the past; and (4) the extent to which arbitrators have previously awarded injunctive relief.  *See* Sanford Decl. at ¶¶ 8-9 (setting forth discovery needed in order to resolve issues presented in Defendant's Motion).

Plaintiff has had no opportunity to take discovery on any of these issues.  *See* Sanford Decl. at ¶ 10.   For this reason alone, the Court should deny Defendant's motion.

## IV.    CONCLUSION

For the reasons set forth above, this Court should deny Defendant's Motion to Dismiss and to Compel Arbitration.

Respectfully submitted this 28th day of June, 2011,

     */s/ David Sanford*
David W. Sanford, D.C. Bar No. 457933
Thomas J. Henderson, D.C.. Bar No. 476854
Stefanie Roemer, D.C. Bar No. 264450
**SANFORD, WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, NW
Suite 300
Washington, D.C.  20009
Telephone: (202) 742-7780
Facsimile: (202) 742-7776

     */s/ Kevin Kinne*
Kevin Kinne, M.A. Bar No. 559004
Christopher M. Hennessey, M.A. Bar No.54680
**COHEN KINNE VALICENTI & COOK LLP**
28 North Street, 3rd Floor
Pittsfield, MA  01201
Telephone: (413) 443-9399
Facsimile**:** (413) 442-9399

*Attorneys for Plaintiff-Class Representative*

## **LOCAL RULE 7.1 CERTIFICATE**

Counsel for the parties conferred on June 28, 2011 regarding the subject of this Motion and have attempted in good faith to resolve or narrow the issues.


_/s/ David Sanford_____

David W. Sanford, D.C. Bar No. 457933
**SANFORD, WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, NW, Suite 300
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776


__/s/ Kevin Kinne_

Kevin Kinne, M.A. Bar No. 559004
**COHEN  KINNE VALICENTI & COOK LLP**
28 North Street, 3rd Floor
Pittsfield, MA 01201
**Telephone:** (413) 443-9399
**Facsimile:** (413) 442-9399


## **CERTIFICATE OF SERVICE**


I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on **June 28, 2011.**


_/s/ Kevin Kinne_ _____