# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
**BRETTA KARP, on behalf of herself**   )
**individually and all others similarly** )
**situated,**                           )
                                        )
                                        )       **Civil Action No.**
      **Plaintiff,** )       **11-10361-FDS**
                                        )
      **v.**     )
                                        )
**CIGNA HEALTHCARE, INC.,**             )
                                        )
      **Defendant.** )
_____ )


## MEMORANDUM AND ORDER ON DEFENDANT'S
## MOTION TO DISMISS AND COMPEL ARBITRATION

**SAYLOR, J.**

This is an action alleging unlawful gender discrimination in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Massachusetts General Laws Chapter 151B.

Plaintiff Bretta Karp, on behalf of herself and all other employees similarly situated, contends that

her employer, defendant CIGNA Healthcare, Inc., engaged in systematic gender discrimination in

the workplace.[1]

The issue before the Court is whether this dispute is subject to arbitration. Defendant has

moved to compel arbitration and to stay or dismiss the litigation. Defendant contends that

plaintiff signed an agreement requiring that disputes such as this be submitted to bilateral

---

[1] Defendant contends that the complaint misidentifies plaintiff's employer as CIGNA Healthcare, Inc. rather than Connecticut General Life Insurance Company. Plaintiff has not amended the complaint, but has represented that if she determines that CGLIC is the real party in interest she will do so. For purposes of this motion, the Court will refer to defendant as CIGNA.

arbitration.  Plaintiff contends that she did not agree to waive class claims against defendant, and that bilateral arbitration will not adequately vindicate her statutory rights under Title VII, and that therefore the arbitration clause cannot be enforced.

For the reasons stated below, the motion to compel arbitration will be granted.

## I.    <u>Factual Background</u>

Bretta Karp began working for CIGNA in June 1997, after CIGNA acquired Healthsource Inc.  (Karp Aff. ¶ 2).[2]  Karp worked as a Provider Contract Manager, and was responsible for managing contracts with hospitals and other healthcare providers.  (*Id.* ¶ 3; Compl. ¶ 63).

In February 1998, CIGNA provided Karp with a copy of the "CIGNA Healthcare Division:  Employment Dispute Arbitration Policy" (the "1998 Policy").  (Stein Decl. ¶ 19, Ex. E, F).  The 1998 Policy required that employees arbitrate their disputes with the company rather than going to court.  (*Id.*, Ex. E).  It did not address class actions or class arbitration.  (*See id.*).  On February 17, 1998, Karp signed a receipt acknowledging that she received the 1998 Policy and other policies relevant to her employment.  (Def. Mot., at 5-6; Stein Decl. ¶ 19, Ex. F).

On November 4, 2005, CIGNA sent a company-wide e-mail informing employees that the Employee Handbook had been updated to reflect changes in the company's policies and procedures. (Karp. Aff. ¶ 10-11, Ex. 1).  The e-mail contained a link to an electronic copy of the Handbook, and instructed employees to complete an electronic receipt indicating that they had received the handbook.  (*Id.*; *see also* Stein Decl., Ex. G).  The e-mail indicated that failure to fill out the receipt could impact the employee's future employment with the company.  (Karp. Aff. ¶¶ 9-10, Ex. 1).

---

[2] CIGNA Health Care, Inc. is a subsidiary of CIGNA Healthcare Holdings, Inc., which is a subsidiary of CIGNA Corporation.

CIGNA sent Karp e-mails on November 9 and November 16, 2005, that contained a link to the handbook. The e-mails also reminded Karp that she needed to sign the electronic handbook receipt, and that not doing so could "impact [her] employment future at CIGNA." (Karp Aff., Ex. 2, 3). On November 22, 2005, Karp checked "yes" on the handbook receipt. (Stein Decl., Ex. G). The electronic receipt stated in relevant part:

> I acknowledge that I have received or reviewed the updated (November 2005) CIGNA Employee Handbook, which outlines the policies that are available and applicable to all of the CIGNA companies' employees.
>
> I understand that a full text of (or additional details about) specific policies, procedures and programs, are posted on CIGNA's websites.
>
> * * *
>
> I agree any dispute between CIGNA and me arising out of or relating to my candidacy for employment, employment, or termination of employment with CIGNA (with the exception of workers compensation claims, ERISA claims and administrative agency charges) shall be resolved under CIGNA's Employment Dispute Arbitration Program which includes final mandatory binding arbitration. I understand that any such Arbitration will be conducted pursuant to the CIGNA Employee Dispute Arbitration Rules and Procedures in effect at the time such arbitration is commenced.

(*Id.*). The handbook, CIGNA's e-mails, and the electronic receipts did not mention class arbitration or a class-action waiver.

## A. CIGNA's Dispute Resolution Policy

The CIGNA employee handbook summarizes the employment dispute resolution program as involving internal and external resolution processes. (Stein Decl., Ex. A, at 25). Specifically, the handbook states that "[b]y accepting employment . . . you have agreed to arbitrate serious employment-related disagreements between you and the Company . . . using the Company's Employment Dispute Arbitration Policy and Employment Dispute Arbitration Rules and

Procedures." (*Id.* at 25-26). These "serious disagreements" include "claims, demands, or actions under Title VII of the Civil Rights Act of 1964, . . . and any other federal, state or local statute, regulation, ordinance, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment." (*Id.* at 26). The last page of the Handbook states that "a full text of (or additional details about) specific policies, procedures and programs, are posted on CIGNA's websites." (*Id.* at 39).[3]

The CIGNA Arbitration Policy states that "arbitration by a neutral third-party is the required and final means for the resolution of any employment related legal claim not resolved by the CIGNA Companies' internal dispute resolution process." (Stein Decl., Ex. B, at 1). The Arbitration Policy and the Arbitration Rules and Procedures provide additional detail, not found in the Handbook, as to the scope of arbitration. Specifically, the Arbitration Policy states:

> No class-wide arbitrations are allowed under the CIGNA Companies' Employment Dispute Arbitration Policy or the Rules and Procedures. The arbitrator has no jurisdiction to certify any group of current or former employees, or applicants for employment, as a class in any arbitration setting.

(Stein Decl., Ex. B, at 3). In addition, the Arbitration Rules and Procedures state:

> Each party seeking resolution of its, his or her claims pursuant to an agreement to arbitrate under these Rules and Procedures must proceed individually. There shall be no class or representative actions permitted. An Arbitrator shall have no authority to hear claims of or award damages to any person or entity who has not initiated arbitration and selected an arbitrator in accordance with these Rules and Procedures. Also, an arbitrator shall not have authority to consolidate claims or consider individual claims collectively on the ground that such actions promote efficiency or that the individual damages may be too small to proceed economically, except when there is an express agreement between the Company and the employees in writing, or on the stenographic record of the particular arbitration proceeding for which the agreement to proceed collectively is made.

---

[3] Karp contends that in June 2011, she attempted to find a link to the Arbitration Policy or the Arbitration Rules and Procedures on CIGNA's intranet website, but was unable to do so. (Karp Aff. ¶¶ 25-27). To date, she alleges, CIGNA has never presented her with a copy of its current Arbitration Rules or Policy. (*Id.* ¶ 29).

(Stein Decl., Ex. C, at 2, ¶ 1).

The Arbitration Rules and Procedures also address the scope of discovery and relief. Specifically, they state that "[a] party will be entitled to take no more than two days of depositions," and that "[t]he scope and timing of discovery may be expanded, altered, amended or otherwise changed to accommodate the circumstances of a particular arbitration at the discretion of the arbitrator." (Stein Decl., Ex. C, at 7-8, ¶ 11). The rules and procedures also state that "[t]he arbitrator will have full power and authority to award any remedy that either party would have been entitled to had the employee taken the dispute to a government agency or to a court." (*Id.* at 12, ¶ 25).

## II.     Procedural History

On March 3, 2011, Karp instituted the present action against CIGNA on behalf of herself and all other similarly situated female employees. The complaint alleges that CIGNA, through its policies, practices, and procedures, engaged in systematic gender discrimination by paying women less, denying or denying promotions, gave women less preferable work assignments, and subjected women to gender-based hostility. (Compl. ¶ 23). The complaint seeks declaratory and injunctive relief, as well as compensatory, nominal, and punitive damages and attorney's fees. (Compl. at 21-23). Defendant has moved to compel arbitration and for dismissal after referral to arbitration, or, in the alternative, to stay the litigation pending the conclusion of arbitration.[4]

---

[4] Defendant has also moved to strike the affidavit of Michael D. Lieder. To the extent that Lieder's affidavit consists of legal arguments and conclusions, it will be struck. *Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 54-55 (1st Cir. 2006); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997); *Northern Light Tech., Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 109 n.14 (D. Mass. 2000). Read liberally, only paragraphs 6-8, 16-19, 23, 31-35, 41, and parts of paragraphs 21 and 30 do not contain legal interpretation and conclusions. Plaintiff contends that these portions are admissible as expert testimony of industry custom and practice. The remaining portions of the affidavit do not affect the outcome of the present motion, and thus the Court need not determine whether the remainder of the affidavit is admissible as expert testimony. Accordingly, defendant's motion to strike will be granted as to paragraphs 1-5, 9-15, 20, the second sentence of paragraph 21, paragraphs

### III.  Legal Standard

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., governs the enforcement of written arbitration agreements.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding that the FAA extends to employment cases for employees other than those engaged in transportation).  It was enacted in order to reverse longstanding judicial hostility to arbitration agreements and to "place such agreements upon the same footing as other contracts." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 271 (1995) (citation and internal quotation omitted); *accord AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-1746 (2011).[5] When "construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'"  *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773-74 (2010) (citation omitted)).  The act promotes "a liberal federal policy favoring arbitration agreements . . . . [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

"A party who is seeking to compel arbitration must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'"

---

22, 24-29, the first sentence of paragraph 30, and paragraphs 36-40.  Defendant's motion to strike as to the remainder of Lieder's affidavit will be denied without prejudice to its renewal on other grounds.

[5]  The FAA states, in relevant part, as follows:

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

*Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir.

2011). "When an enforceable arbitration agreement exists between the parties, a court may

enforce that agreement by staying existing litigation pending arbitration of the parties, 9 U.S.C. §

3, or compelling the parties to arbitrate, 9 U.S.C. § 4." *DeLuca v. Bear Stearns & Co.*, 175 F.

Supp. 2d 102, 106-07 (D. Mass. 2001).

## IV.    Analysis

### A.    Whether the Class Claims Should Be Arbitrated

The parties do not dispute that plaintiff knowingly agreed to arbitrate her claims of gender

discrimination under Title VII. *See Soto-Fonalledas*, 640 F.3d at 476 ("[E]mployers and

employees may agree to submit Title VII . . . claims to arbitration."); *Rosenberg v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 21 (1st Cir. 1999) (agreements to arbitrate Title VII

claims require "some minimal level of notice to the employee that statutory claims are subject to

arbitration). Plaintiff, however, contends that she is entitled to assert a class-based pattern-or-

practice claim (either through a class action or class arbitration) because she did not agree to the

class arbitration bar or to waive her class claims.[6]

The Court can only compel class arbitration if there is a "contractual basis for concluding

that [the parties] *agreed* to do so." *Stolt-Nielsen*, 130 S. Ct. at 1775 (emphasis in original); *cf.*

---

[6] When an arbitration agreement is ambiguous, the determination of whether it bars or allows class arbitration is normally a question for the arbitrator, not the courts, to decide. *See Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 56 (1st Cir. 2007); *Kristian v. Comcast Corp.*, 446 F.3d 25, 41 (1st Cir. 2006) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 447 (2003)). However, as discussed below, the arbitration agreement here unambiguously does not allow class arbitration. *See Kristian*, 446 F.3d at 53-54; *see also Stolt-Nielsen*, 130 S. Ct. at 1775. To the extent that plaintiff challenges the formation of a contract to bar class arbitration, that dispute is for the Court to decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855-56 (2010). In any event, "[a]n agreement to arbitrate does not divest a court of its jurisdiction," and the parties have agreed that the Court should decide these issues. *Skirchak*, 508 F.3d 49, 56-57 (1st Cir. 2007); (*see also* Def. Mem. at 11 n.3; Pl. Mem. at 9-10).

*Skirchak v. Dynamics Research Corp.*, 508 F.3d 49, 63 (1st Cir. 2007) (allowing class arbitration where class bar was unconscionable and parties preferred "arbitration even if the class action waiver clause was stricken"); *Kristian v. Comcast Corp.*, 446 F.3d 25, 62-63 (1st Cir. 2006) (compelling class arbitration where severance clause was "specifically affixed to the class arbitration bar").[7] The Supreme Court has recently emphasized that "the 'changes brought about by the shift from bilateral arbitration to class-action arbitration' are 'fundamental,'" and thus non-consensual, "manufactured" class arbitration "is inconsistent with the FAA." *AT&T Mobility*, 131 S. Ct. at 1750 (quoting *Stolt-Nielsen*, 130 S. Ct. at 1776).

Class arbitration is thus permissible only if *both* parties agree. Put another way, a party cannot be compelled to arbitrate class claims unless something in the contract indicates, at least implicitly, that it agreed to *permit* class arbitration. *See Stolt-Nielsen*, 130 S. Ct. at 1776; *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 124 (2d Cir. 2011) ("*Stolt-Nielsen* does not foreclose the possibility that parties may reach an 'implicit'—rather than 'express'—agreement to authorize class-action arbitration.").

Here, the Handbook is silent on the issue of class arbitration. However, it states: "[b]y accepting employment . . . you have agreed to arbitrate serious employment-related disagreements between you and the Company . . . using the Company's Employment Dispute Arbitration Policy and Employment Dispute Arbitration Rules and Procedures." (Stein Decl., Ex. A, at 25-26).[8] The company policy and procedures unambiguously provide that "[n]o class-wide arbitrations are

---

[7] The Court notes that the neither *Skirchak* nor *Kristian* addressed whether there was a contractual basis for concluding that the parties consented to class arbitration, and thus there is some doubt as to the viability of the precise disposition of those cases in light of *Stolt-Nielsen*. However, the Court need not address the issue on the facts presented here.

[8] The last page of the Handbook states that "a full text of (or additional details about) specific policies, procedures and programs, are posted on CIGNA's websites." (Stein Decl., Ex. A, at 39).

allowed under the CIGNA Companies' Employment Dispute Arbitration Policy or the Rules and Procedures," (Stein Decl., Ex. B, at 3), and that "[e]ach party seeking resolution of its, his or her claims pursuant to an agreement to arbitrate under these Rules and Procedures must proceed individually. There shall be no class or representative actions permitted." (Stein Decl., Ex. C, at 2, ¶ 1).

Plaintiff disputes whether, under the circumstances, she agreed to the bar on class arbitration, or agreed to waive her class arbitration rights. There is certainly some question whether defendant's policies and procedures can be enforced against plaintiff simply because she agreed to the terms of the Handbook.[9] But there is no doubt that defendant did *not* agree to *permit* class arbitration. Indeed, its policies and procedures state clearly that class arbitration is not permitted. Accordingly, defendant cannot be compelled to submit to class arbitration. *See AT&T Mobility*, 131 S. Ct. at 1750 (stating that class arbitration must be consensual).

## B.    Whether the Class Claims Can Be Litigated

Although plaintiff cannot arbitrate her class claims, it does not necessarily follow that she may litigate her class claims in a judicial forum. In order to maintain a class action, a plaintiff must have an individual claim; she cannot serve as a class representative without such a claim. *See General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) ("Title VII . . . contains no special authorization for class suits maintained by private parties. An individual

---

[9] Under Title VII, employees cannot be compelled to arbitrate unless they are provided "'some minimal level of notice' sufficient to apprise those employees that continued employment would effect a waiver of the right to pursue the claim in a judicial forum." *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 555 (1st Cir. 2005) (quoting *Rosenberg*, 170 F.3d at 21). Although, as discussed, the Handbook incorporates the full company policies, and states that the policies "are posted on CIGNA's websites," this may be insufficient to provide a reasonable employee with notice of the class arbitration policy. *See Campbell*, 407 F.3d at 557-558; *Rosenberg*, 170 F.3d at 20 (holding that enforcing arbitration was not appropriate where form given to plaintiff did not indicate that the agreement to arbitrate extended to all employment disputes).

litigant seeking to maintain a class action under Title VII must meet the prerequisites . . . specified in Rule 23(a)." (internal quotation marks omitted)).  By agreeing to arbitrate her individual claim, plaintiff cannot serve as a class representative in a litigated class action.  It would appear, therefore, that plaintiff cannot be permitted to litigate her class claims.

The analysis, however, does not end there.  Plaintiff contends that if she is required to arbitrate her claims bilaterally, she will not be able to vindicate her statutory rights under Title VII, and, therefore, the arbitration clause cannot be enforced.  *See Kristian*, 446 F.3d at 61.[10]  "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Circuit City Stores v. Adams*, 532 U.S. 105, 123 (2001) (quoting *Gilmer*, 500 U.S. at 26).  Thus, "[i]f arbitration prevents plaintiffs from vindicating their rights, it is no longer a 'valid alternative to traditional litigation.'" *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 12 (1st Cir. 2009) (quoting *Kristian*, 446 F.3d at 37); *accord Soto-Fonalledas*, 640 F.3d at 476.[11]  Typically, a plaintiff is

_____

[10] Plaintiff also contends that the class arbitration bar should be invalidated because it is unconscionable under Massachusetts law.  *See Skirchak*, 508 F.3d at 57-61.  The Court does not need to reach that issue, having found that defendant did not agree to permit class arbitration.

[11] Defendant contends that *AT&T Mobility LLC v. Concepcion* effectively overturns *Kristian* and forecloses the argument that the need to vindicate statutory rights should bar the enforcement of an otherwise valid arbitration clause.  *See* 131 S. Ct. at 1746 ("[A]greements to arbitrate [can] be invalidated by generally applicable contract defenses . . . but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (internal quotation marks omitted)).  That reading of *AT&T Mobility* appears to be unduly expansive.  In *AT&T Mobility*, the Supreme Court was determining whether California state unconscionability law was preempted by the FAA.  *Id.*  Although there is some similarity between a vindication-of-statutory-rights analysis and a state-law-unconscionability analysis, *see Kristian*, 446 F.3d at 63-64, unconscionability is a state-law doctrine.  While state law cannot contradict federal law, Congress is free to create other statutory rights that may limit the reach of the FAA.  *See, e.g.*, *Gilmer*, 500 U.S. at 26; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627 (1985) ("Just as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable."); *Campbell*, 407 F.3d at 552-53.

unable to vindicate her statutory rights if she is effectively foreclosed from bringing a claim provided by a federal statute. *See Kristian*, 446 F.3d at 54.

There is no doubt that plaintiff will have an opportunity to vindicate her rights under Title VII in an arbitration proceeding using any standard method of proof. The problem arises because plaintiff seeks to bring *only* a so-called pattern-or-practice discrimination claim. She contends that she will not be able to assert a pattern-or-practice claim both because it is unavailable outside of the class-action context and because as a practical matter she will not be able to obtain enough discovery in an arbitration to prove such a claim.[12]

The pattern-or-practice claim plaintiff seeks to assert is an unusual type of claim, with a peculiar genesis. Under Title VII, Congress specifically gave the Attorney General the authority to bring a civil action requesting relief (such as an injunction or restraining order) against any person or group of persons engaged in a "pattern or practice [that] is of such a nature and is intended to deny the full exercise of the rights [of Title VII]." 42 U.S.C. § 2000e-6(a); *see*

---

[12] This is not a case where the economics of proving the claim make individual litigation impracticable. *Eg. Kristian*, 446 F.3d at 57-58. The plaintiffs in *Kristian* only stood to recover at most a few thousand dollars on their individual claims; here, plaintiff had a salary of nearly $200,000 and she can potentially recover substantial compensatory and punitive damages. Moreover, the class action complaint itself seeks "not less than $100 million" in damages.

Plaintiff also contends that she cannot not vindicate her rights under Title VII by bringing her claims individually because she would not be able to obtain certain types of injunctive relief. However, the arbitration rules and procedures allow the arbitrator to "to award any remedy that either party would have been entitled to had the employee taken the dispute to a government agency or to a court." (Stein Decl., Ex. C, at 12, ¶ 25). To the extent plaintiff contends that the arbitration agreement would prevent her from obtaining injunctive relief for the benefit of other class members, such a limitation does not prevent plaintiff from vindicating *her own* rights under Title VII. Moreover, such a limitation does not invalidate a bilateral arbitration clause as such "arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide and equitable relief." *Gilmer*, 500 U.S. at 32; *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 286-88 (2002) ("[T]he EEOC is not merely a proxy for the victims of discrimination and that [its] enforcement suits should not be considered representative actions subject to Rule 23." (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 326 (1980)).

*International Bhd. of Teamsters v. United States*, 431 U.S. 324, 360-61 (1977).[13]  The statute does not provide a private right of action to bring a pattern-or-practice claim, and the Supreme Court has never interpreted it to do so.

However, in 1984, the Supreme Court stated—in a footnote, in *dicta*—that a private plaintiff could bring such a claim.  *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 n.9 (1984).  Specifically, the footnote stated the following:  "Although *Teamsters* [an action brought by the Attorney General] involved an action litigated on the merits by the Government as plaintiff under § [2000e-6(a)] of the Act, it is plain that the elements of a prima facie pattern-or-practice case are the same in a private class action."  *Id.*  The Court did not provide any analysis as to how it came to that conclusion.[14]

From that uncertain origin, several courts of appeals have permitted private plaintiffs to bring pattern-or-practice class actions using the *Teamsters* method of proof.  *See, e.g.*, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 965 (11th Cir. 2008)*, abrogated on other grounds by* 129 S.Ct. 1937, 1949 (2009); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir. 1998), *vacated on other grounds by* 527 U.S. 1031 (1999); *cf. Loeb v. Textron, Inc.*,

_____

[13] Specifically, § 2000e-6(a) states:

> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this title [42 USCS §§ 2000e *et seq.*], and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

[14] The Supreme Court again recently referred to the doctrine, also in *dicta*, without providing any further explanation.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552, 2561 & n.7 (2011).

12

600 F.2d 1003, 1017 & n.17 (1st Cir. 1979) (stating that "the Supreme Court has held that a *prima facie* showing of discrimination can be made in a class action by showing discriminatory hiring patterns and practices," but noting the Supreme Court had not yet determined whether this showing could be made with the *Teamsters* method of proof), *abrogated on other grounds by* 469 U.S. 111, 126 n.19 (1985).

Under this line of cases, a pattern-or-practice claim is brought by a plaintiff as a class action, "alleg[ing] that the employer had engaged in a pervasive pattern of . . . discrimination in various company policies." *See Cooper*, 467 U.S. at 875. Isolated acts of discrimination against a particular employee, including the plaintiff, are insufficient to establish a *prima facie* case of a pattern or practice of discrimination; rather, "it must be established by a preponderance of the evidence that '[] discrimination was the company's standard operating procedure—the regular rather than the unusual practice.'" *Id.* at 876 (quoting *Teamsters*, 431 U.S. at 336). A plaintiff can establish a pattern or practice of discrimination by relying on statistical evidence and other similarly situated employees' accounts of discrimination. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2555-56 (2011); *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 158 & n.5 (2d Cir. 2001) ("In a pattern and practice disparate treatment case, statistical evidence constitutes the core of a plaintiff's prima facie case. Within the . . . individual disparate treatment model, however, statistical evidence is only one small part of a substantial web of evidence indicating pretext." (quoting *Bell v. EPA*, 232 F.3d 546, 553 (7th Cir. 2000)), *abrogated on other grounds by* 131 S. Ct. 2541, 2557 (2011); *Lowery*, 158 F.3d at 761. Once established, a finding of pattern-or-practice discrimination justifies an award of prospective relief (such as an injunction against the continuation of the discriminatory practice). More significantly for present purposes,

such a finding creates a presumption of individual discrimination. *Dukes*, 131 S. Ct. at 2552, 2561 & n.7; *Teamsters*, 431 U.S. at 361. Thus, in a pattern-or-practice claim, a plaintiff need not establish individual injury to establish liability and obtain injunctive relief. *See Diaz v. Ashcroft*, 301 F. Supp. 2d 112, 115-16 (D.P.R.) (quoting *Cooper*, 467 U.S. at 876).[15]

A second stage of proceedings will often be required to determine the existence and scope of individual relief in a pattern-or-practice case. *See Dukes*, 131 S.Ct. at 2561; *Teamsters*, 431 U.S. at 362; *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001). However, an individual plaintiff need only show that there was an adverse employment action. *Teamsters*, 431 U.S. at 362. At that point, the burden shifts to the defendant to prove that it took that action for lawful reasons. *Dukes*, 131 S.Ct. at 2561 ("At this phase, the burden of proof will shift to the company . . . ."); *Teamsters*, 431 U.S. at 362 ("The proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy."). Thus, "individual plaintiffs reap a significant advantage for purposes of [this] second stage: they are entitled to a presumption that the employer had discriminated against them." *Thiessen*, 267 F.3d at 1106 (citing *Cooper*, 467 U.S. at 875).

This method of proof obviously differs from the methods used in an ordinary individual discrimination claim. In such a case, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff regarding the particular employment

---

[15] This creates a peculiar situation where a class plaintiff effectively acts as a private attorney general and can establish liability without proving any individual harm. *See Davis*, 516 F.3d at 968 & n.29. Although this makes sense when the government is bringing the claim, it creates an odd situation in the context of a private class action where a putative class representative must, in addition to the other requirements of Rule 23, allege that she has an individual claim that is typical of all members of the class. *See Dukes*, 131 S.Ct. at 2552-57; *Falcon*, 147 U.S. at 156.

decision remains at all times with the plaintiff." *Cooper*, 467 U.S. at 875 (internal quotation marks and citation omitted). In essence, "[t]he effect of the presumption from the liability stage is to substantially lessen each class member's evidentiary burden relative to that which would be required if the employee were proceeding separately with an individual disparate treatment claim . . . ." *Robinson*, 267 F.3d at 159.

The problem here arises out of the fact that courts have held that a pattern-or-practice claim can *only* be brought as a class action, and the individual plaintiff can *only* recover on such a claim if he or she proves the class-wide claims first. *See, e.g.*, *Davis*, 516 F.3d at 967-69 & n.30; *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004); *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 356 & n.4 (5th Cir. 2001) (holding that the *Teamsters* method is not available to plaintiffs that are not a part of a class action); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2nd Cir. 1998) ("[I]t is evident that the Court in *Teamsters* was not laying down rules for private, non-class actions."); *Lowery*, 158 F.3d at 761 ("[W]e decline to give individual plaintiffs a pattern or practice cause of action or allow them to use the *Teamsters* method of proof."); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866 n.6 (7th Cir. 1985) (stating that pattern-or-practice "suits by their very nature, involve claims of classwide discrimination . . . ."); *Velez v. Marriott PR Mgmt.*, 590 F. Supp. 2d 235, 244-245 (D.P.R. 2008); *Diaz*, 301 F. Supp. 2d at 115-16; *Ramirez v. DeCoster*, 194 F.R.D. 348, 361-362 & n.23 (D. Me. 2000).

Plaintiff here has alleged only a pattern-and-practice claim. She contends that because she can only assert such a claim in a class action, forcing her to arbitrate her claim bilaterally will preclude her from asserting the claim at all. Thus, she contends, the arbitration agreement cannot be enforced without impairing her ability to vindicate her rights under federal law.

A threshold question is whether the principle that a plaintiff may *not* assert a pattern-or-practice claim except in a class action is binding on this Court. It appears that this Court is not constrained by any such binding rule. There is no statute that so provides. There is no relevant binding precedent of the Supreme Court; even the footnote in *Cooper* does not *prohibit* individual pattern-or-practice claims, but merely sanctions class claims. And there is no relevant binding precedent in the First Circuit.

The question then becomes whether that principle should be applied here to defeat the arbitration agreement. In order to analyze that question, it is necessary to consider the somewhat unusual nature of the pattern-or-practice doctrine.

A pattern-or-practice claim is clearly not a separate cause of action. The Supreme Court in *Cooper* did not intend to create a private right of action under § 2000e-6(a); the opinion did not say so, and it is well-established that private rights of action are not to be lightly implied. *See Alexander v. Sandoval*, 532 U.S. 275, 286, 289 (2001) (noting that "private rights of action to enforce federal law must be created by Congress," and that when a statute is "phrased as a directive to federal agencies," a private remedy in favor of individual persons is not normally implied (citations omitted)). *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)).[16]

Just as clearly, Rule 23 is a mere procedural device that creates no substantive rights. *See Dukes*, 131 S. Ct. at 2546; *Aguilar v. United States Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 16 (1st Cir. 2007) ("Although the class action device constitutes an important weapon in the modern litigator's armamentarium, it is merely a

---

[16] Courts may not create a private right of action "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 287. Rather, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* at 286 (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)).

procedural device governed by Federal Rule of Civil Procedure 23, and Congress retains the power to restrict its availability.").

A plaintiff in a pattern-or-practice claim must therefore assert a substantive right of action in order to bring a class action under Rule 23. And because there is no private right of action under § 2000e-6(a), the right that plaintiff asserts in such a claim must necessarily be a claim of unlawful discrimination arising under Title VII.

A pattern-or-practice "claim" is, therefore, merely a method of proof—that is, a method of proving a Title VII claim. *See Aguilar*, 510 F.3d at 16 (a pattern-or-practice claim is "not a freestanding cause of action, but merely a method of proving an underlying legal violation."); *Celestine*, 266 F.3d at 355 (pattern-or-practice clam is "merely another method by which disparate treatment can be shown." (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1219 (5th Cir. 1995)); *Lowery*, 158 F.3d at 762 (same). More specifically, it is a method of proof with two components: an evidentiary component (that is, a plaintiff may prove unlawful discrimination through evidence that the company engaged in a pattern or practice of discrimination, and that the pattern or practice caused her injury) and a burden-shifting component (that is, when a plaintiff has proved the existence of a pattern or practice and an adverse employment action, the burden shifts to the defendant to disprove causation).

The evidentiary component of the method of proof ought to be, and normally is, available to individual plaintiffs. In other words, an individual plaintiff, as opposed to a class-action plaintiff, is normally permitted to show that her employer engaged in a widespread pattern or practice of gender discrimination and that she is a victim of that discrimination. *See Lowery*, 158 F.3d at 761; *Velez*, 590 F. Supp. 2d at 245 n.4; *Murphy v. PriceWaterhouseCoopers, LLP*, 357 F.

Supp. 2d 230, 247 (D.D.C. 2004) ("[N]otwithstanding the unavailability of a 'pattern and practice' theory, the plaintiffs may still use evidence of systematic or general discrimination in establishing their individual discrimination claims.").  A contrary rule would be illogical; if an individual plaintiff can be permitted to prove that she was the victim of an isolated incident of discrimination, involving a single decision-maker, surely she should be allowed to prove that she was the victim of a more egregious form of discrimination, involving the unlawful practices of the entire company.  And if the type of evidence used to prove that form of discrimination is somehow unreliable, unfair, or unduly burdensome, the method should not be used either by class or individual plaintiffs.

The more difficult question arises out of the burden-shifting component of the pattern-or-practice method of proof.  Under the pattern-or-practice method of proof, once the plaintiff has established that the pattern or practice existed and that she suffered an adverse employment action, the burden shifts to the defendant to disprove that the action was the product of the discriminatory practice.  *See Dukes*, 131 S. Ct. at 2561 (quoting *Teamsters*, 431 U.S. at 362).

No court appears to have held that the burden-shifting device used in pattern-or-practice class actions is available to individual plaintiffs.  It is by no means obvious that this device should be available to class-action plaintiffs but not to individual plaintiffs; indeed, the distinction seems arbitrary and illogical.[17]  But whether that distinction is sensible or not, this Court is not free to fashion its own burden-shifting rules.  Plaintiff here must therefore bear the burden of proving

---

[17] There is a "crucial difference" between an individual discrimination claim and the *liability* stage of a pattern-or-practice case, in that the liability stage does not focus on "individual hiring decisions, but on a pattern of discriminatory decisionmaking."  *Cooper*, 467 U.S. at 877.  This distinction is less relevant in the second stage of a pattern-or-practice case, where the defendant has "the right to raise any individual affirmative defenses it may have, and to 'demonstrate that the individual applicant was denied an employment opportunity for lawful reasons.'"  *Dukes*, 131 S. Ct. at 2561 (quoting *Teamsters*, 431 U.S. at 362).

causation when arbitrating her individual claim, even if she establishes that the company engaged in a widespread pattern or practice of unlawful discrimination.

That raises the final question: if plaintiff here cannot utilize the burden-shifting device—and therefore has the burden of proving that her injury was caused by unlawful discrimination—will she be unable to vindicate her rights under Title VII, such that the arbitration agreement should not be enforced? The Court concludes that the answer is "no." In simple terms, such a relatively minor procedural difference—which is unlikely to make a practical difference in the outcome of the case—is not sufficient to render the arbitration agreement unenforceable.

As noted, plaintiff can offer evidence in the arbitration proceeding of a corporate-wide pattern or practice of discrimination to prove that she was the victim of discrimination. *See Lowery*, 158 F.3d at 761; *Velez*, 590 F. Supp. 2d at 245 n.4.[18] Plaintiff has alleged the existence of such a practice. The complaint alleges, among other things, that defendant has a corporate-wide practice or policy that "bars female employees from better and higher paying positions which have traditionally been held by male employees." (Compl. ¶ 49). According to the complaint, defendant's promotion, training, and performance evaluation policies are systematically designed to ensure that female employees "remain in the lower classification and compensation levels." (*Id.*). Even without the benefit of the burden-shifting device, if plaintiff can demonstrate that such

---

[18] Although plaintiff contends she is only alleging a pattern-or-practice claim, the complaint alleges facts that could support both class pattern-or-practice and individual disparate-treatment and hostile-work-environment claims. Whether plaintiff is bringing a pattern-or-practice claim depends on the substance of the claim, not how plaintiff has characterized it. *Falcon*, 457 U.S. at 155-57; *Aguilar*, 510 F.3d at 16 ("[C]onglomerating individual claims and posturing the conglomeration as a pattern and practice claim does not have talismanic effects."); *see also Megwinoff v. Banco Bilbao Vizcaya*, 233 F.3d 73, 75-76 (1st Cir. 2000); *Lowery*, 158 F.3d at 759 ("[M]erely alleging a pattern or practice of discrimination [does not] automatically entitle plaintiffs to class certification." (citing *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155-57 (1982)).

widespread and insidious discriminatory practices exist, surely she should have relatively little difficulty proving that defendant, consistent with those policies, discriminated against her.

Furthermore, and in any event, plaintiff will be required, one way or the other, to show that unlawful discrimination caused her injury. Even with the burden-shifting device, the finder of fact must still make an individualized determination that the pattern or practice of discrimination actually caused plaintiff's injury. *Dukes*, 131 S. Ct. at 2560 (stating that in a class action pattern-or-practice case, an employer "is entitled to individualized determinations of each employee's eligibility for backpay"). Again, if plaintiff can prove a sweeping corporate policy of discrimination, showing causation ought to be a relatively minor hurdle.[19]

Plaintiff's other arguments against arbitration are not sufficient to tip the balance in the other direction.[20] She contends that limitations on discovery and remedies would effectively

---

[19] The Court notes that one other court, faced with a substantially similar issue, concluded that the plaintiff was unable to vindicate her statutory rights when she was foreclosed from bringing a pattern-or-practice claim. *See Chen-Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 409-410 (S.D.N.Y. 2011). In *Chen-Ouster*, the magistrate judge reasoned that because the "showings required for individual and pattern or practice discrimination claims is substantive[,] . . . finding that the plaintiff impliedly agreed to waive her right to proceed on a class basis by agreeing to arbitrate . . . would prevent the plaintiff from vindicating her statutory cause of action." *Id.* However, in so holding, the magistrate judge assumed that because courts had construed Title VII to provide substantively different methods of proving an underlying discrimination claim, that plaintiffs could not vindicate their statutory rights if one of those methods of proof were foreclosed. However, as discussed, Title VII does not create a statutory right in a certain method of proving a discrimination claim, but creates a right to seek relief from discrimination. Here, foreclosing a particular method of proof does not prevent plaintiff from bringing her discrimination claim.

[20] Plaintiff also relies on *Kristian* for the proposition that compelling bilateral arbitration would not allow her to vindicate her statutory rights because of limitations on potential remedies. The court in *Kristian* found that a class bar prevented the plaintiff from vindicating his statutory rights under federal antitrust laws. 446 F.3d 25, 61 (1st Cir. 2006). In so holding, the court specifically distinguished the issues with which it was faced in a complex antitrust case from the comparatively simple employment discrimination context. *See Kristian.*, 446 F.3d at 58 (distinguishing *Gilmer* and cases relying on it). Specifically, the First Circuit stated that "[t]he complexity of an antitrust case generally, and the complexity and cost required to prosecute a case against [defendant] specifically, undermine the . . . rationales for supporting a bar to class arbitration." *Kristian*, 446 F.3d at 58; *see also, e.g.*, *Adler v. Dell, Inc.*, 2008 U.S. Dist. LEXIS 104912, at *30-*32 (E.D. Mich. Dec. 18, 2008) (distinguishing *Kristian*); *Ornelas v. Sonic-Denver T, Inc.*, 2007 U.S. Dist. LEXIS 6214, at *18-*19 (D. Colo. Jan. 29, 2007) (same).

prevent her from being able to bring a pattern-or-practice claim, because her ability to explore broader corporate practices will be limited. But such types of limitations are common to all forms of arbitration. *See AT&T Mobility*, 131 S. Ct. at 1752-1753; *Gilmer*, 500 U.S. at 31-33; *Rosenberg*, 170 F.3d at 16 ("[A]lthough arbitration discovery 'procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.''" (internal citations omitted)). If arbitration agreements could be avoided because discovery is limited, federal arbitration policy would soon be eviscerated. Furthermore, and in any event, the arbitration rules and procedures in this case give the arbitrator discretion to expand the "scope and timing of discovery" to "accommodate the circumstances of a particular arbitration," (Stein Decl., Ex. C, at 7-8, ¶ 11), and allow the arbitrator to "to award any remedy that either party would have been entitled to had the employee taken the dispute to a government agency or to a court." (*Id.* at 12, ¶ 25). Thus, whether the arbitration agreement provides plaintiff with sufficient discovery and potential relief to vindicate her rights under Title VII must be resolved by the arbitrator in the first instance. *See Anderson v. Comcast, Corp.*, 500 F.3d 66, 72 (1st Cir. 2007).

Moreover, allowing plaintiff to bring a class action in a judicial forum despite a valid arbitration clause would effectively allow a procedural device—a burden-shifting rule contained within a method of proof—to trump the arbitration agreement and the FAA. *See Dukes*, 131 S. Ct. at 2561 ("[T]he Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right." (citing 28 U.S.C. § 2072(b)); *AT&T Mobility*, 131 S. Ct. at 1752-53 ("Parties *could* agree to arbitrate pursuant to the Federal Rules of Civil Procedure . . .

[however,] [a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." (emphasis in original)).  Where plaintiff can plainly vindicate her federal rights in an arbitration proceeding, such a result is both unwise and unnecessary.

Accordingly, enforcing the arbitration clause and compelling bilateral arbitration of plaintiff's discrimination claims would not prevent her from vindicating her statutory rights under Title VII.  Plaintiff will therefore be required to submit her claim to arbitration in accordance with this decision.

### C.     Proper Disposition of the Case

Having determined that the parties entered into a valid binding agreement to arbitrate claims arising under Title VII and that plaintiff can vindicate her rights under Title VII in bilateral arbitration, the Court must now determine the proper disposition of this case.  Defendant urges the Court to dismiss in favor of arbitration.  The Court declines to do so, and instead elects to grant defendant's alternative request for relief.  Given the unique situation presented by this case, the prudent course of action is to stay the proceedings pending arbitration.

## IV.    Conclusion

For the foregoing reasons, defendant's motion to compel arbitration is GRANTED as to plaintiff's pattern-or-practice discrimination claim.  Defendant's motion to strike the Lieder Affidavit is GRANTED in part and DENIED in part.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: April 18, 2012

22